IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI GRAY, et al.<br><br>        Plaintiffs,<br><br>v.<br><br>GOLDEN GATE NATIONAL RECREATIONAL AREA, et al.<br><br>        Defendants. | No. C 08-00722 EDL<br><br>**ORDER REGARDING MOTION FOR RECONSIDERATION; REQUIRING AMENDED COMPLAINT** |

## I. INTRODUCTION

On September 16, 2011, this Court granted Defendants Golden Gate National Recreation Area ("GGNRA") and the National Park Service ("NPS") (collectively "Defendants") motion for leave to file a motion for reconsideration of the Court's Order Granting Plaintiff's Motion for Class Certification based on a recent Ninth Circuit decision, Oliver v. Ralph's Grocery Company, 654 F.3d 903 (9th Cir. Aug. 17, 2011). Subsequently, Defendants notified the Court of another, more recent Ninth Circuit decision, Ellis v. Costco Wholesale Corp., 657 F.3d 970, 2011 U.S. App. LEXIS 19060 (9th Cir. Sept. 16, 2011), that they argued also warrants reconsideration. Defendants filed separate briefs for reconsideration relating to these two new cases, Plaintiffs filed a single opposition, and Defendants filed a single reply. The court heard oral argument on the motion for reconsideration on October 25, 2011. The Court hereby GRANTS IN PART AND DENIES IN PART the motion for reconsideration. Plaintiffs must amend their complaint within two weeks of the date of this Order to allege with further specificity the policies and procedures on which their claims are based.

## II. LEGAL STANDARD

A district court has the discretion to reconsider its prior orders. Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993). Reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Id.; see also Civ. L.R. 7–9(b). Aside from these factors, a district court also has inherent authority to reconsider an interlocutory decision to prevent clear error or prevent manifest injustice. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Generally, motions for reconsideration are disfavored, and are not the place for parties to make new arguments not raised in their original briefs. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925-26 (9th Cir.1988). Nor is reconsideration to be used to ask the Court to rethink what it has already thought. See United States v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D. Ariz.1998) (citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va.1983)).

## III. BACKGROUND

The extensive factual and procedural background of this case was detailed in the Court's Order Granting Class Certification, and is not repeated in full herein. See Dkt. # 99 (Class Cert. Order) at 2-8.

On April 5, 2011, this Court heard oral argument on Plaintiff's motion to certify a class of:

> All persons with mobility and/or vision disabilities who are being denied programmatic access under the Rehabilitation Act of 1973 due to barriers at park sites owned and/or maintained by Golden Gate National Recreation Area. For the purpose of class certification, persons with mobility disabilities are those who use wheelchairs, scooters, crutches, walkers, canes, or similar devices to assist their navigation. For the purpose of class certification, persons with vision disabilities are those who due to a vision impairment use canes or service animals for navigation.

During the hearing and in a follow-up Order dated April 11, 2011, the Court informed the parties that it intended to await the United States Supreme Court's decision in Wal-Mart Stores v. Dukes, or until the end of the Supreme Court's current term, before ruling on the class certification motion. On June 20, 2011, the Supreme Court issued its Order in Wal-Mart Stores v. Dukes, 121 S.Ct. 2541 (2011) and held that the class in that employment discrimination case was not consistent

with Rule 23(a) and should not have been certified, and the respondents' backpay claims were also improperly certified under Rule 23(b)(2). This Court received supplemental briefing from both sides on the impact of the Wal-Mart decision on the parties' previous arguments on class certification.

On August 30, 2011, after considering the parties' original briefs and evidence, their positions during oral argument, and the parties' supplemental Wal-Mart briefs, the Court issued an Order granting Plaintiffs' motion for certification of a class under Federal Rule of Civil Procedure 23(b)(2). The Court's Order relied in part on a July 2010 draft "Review of Policies, Practices and Procedures" prepared by the National Center on Accessibility for the GGNRA after this litigation was commenced (hereinafter referred to as the "NCA Report"), and presented by Plaintiffs in connection with their motion for class certification as Exhibit F to the Elsberry Declaration. See Dkt. # 81-20.

## IV. ANALYSIS

Defendants argue that the Court should reconsider its order certifying the class on grounds that: (1) the Ninth Circuit's Oliver decision, issued 13 days before this Court's class certification order, was a material change in law that requires Plaintiffs to have identified all barriers that constitute the grounds for their discrimination claim in their complaint, or alternatively that the Court failed to consider Defendants' arguments that Plaintiffs could not rely on unpleaded policies, practices and procedures to satisfy their Rule 23 burden, so the Court erred in relying on the NCA Report, which was not mentioned in the Third Amended Complaint ("TAC") in certifying the class; and (2) that Ellis, a decision issued two weeks after this Court's certification order and the first Ninth Circuit opinion to address class certification under Wal-Mart, was a material change in law requiring a finding of "significant proof" that the entire class was injured by a discriminatory policy and one injunction could resolve all claims – findings Defendants claim the Court did not properly make in its Order.

\\
\\

**A. Reconsideration Based on Oliver v. Ralph's Grocery Company**

    **1.    Timeliness of the Request**

Defendants first contend that the Court should reconsider its Order granting class certification on the basis of Oliver v. Ralph's Grocery Company, 654 F.3d 903 (9th Cir. Aug. 17, 2011).[1] Defendants point out that, although this opinion was issued 13 days before this Court's class certification order, it came out after briefing and argument on the motion for class certification and after the time allotted for supplemental briefing on the impact of the United States Supreme Court's Wal-Mart decision. Additionally, Defendants argue that they could not have known that Oliver would be relevant to the Court's decision because they did not anticipate that the Court would rely on the NCA Report. They argue that Oliver is therefore a "material change in law about which Defendants could not have informed the Court" prior to its Order, so it is an appropriate basis for reconsideration. Motion at 2.

It is a close question whether or not Defendants should have informed the Court of Oliver prior to the Court's Class Certification Order, given that they now argue that it governs and that they made arguments relating to its holding in their opposition to the class certification motion. However, because Oliver is not a class action or a Rehabilitation Act case and instead addresses Federal Rule of Civil Procedure 8 pleading standards for Americans With Disabilities Act ("ADA") cases, it is somewhat understandable that neither the parties nor the Court were immediately alerted to any potential relevance of the opinion to the issues before the Court at the class certification stage. Therefore, their failure to notify the Court of this recent authority prior to issuance of the Court's Class Certification Order is not alone a sufficient reason to deny the motion for reconsideration.

    **2.    Is Oliver A Material Change in Applicable Law?**

The issue before the Court on reconsideration is whether Oliver constitutes a material change in applicable law, and if so, whether Defendants' arguments based on Oliver are repetitive of those raised and rejected previously or whether the case requires the Court to reconsider its prior decision to certify a class.

---

[1] On October 24, 2011, the Ninth Circuit voted to deny a petition for rehearing and rehearing *en banc*.

4

The individual plaintiff in Oliver sued the owner of a grocery store under the ADA and related state laws. The plaintiff's complaint alleged that he "encountered barriers (both physical and intangible) that interfered with – if not outright denied – his ability to use and enjoy the goods, services, privileges, and accommodations offered" at the facility. The complaint also stated that, "[t]o the extent known by Oliver, the barriers at the Food 4 Less included, but [we]re not limited to" 18 separate architectural features which he listed. Oliver, 654 F.3d at 905. After receiving the complaint, the defendant began remedying some of the alleged defects, and the court denied the plaintiff leave to amend his complaint to allege six additional barriers because he failed to show good cause for the delay. Four months later, the plaintiff filed an expert report identifying approximately 20 barriers, some of which had not been listed in the complaint. Id. at 906. The plaintiff explained that his delay in identifying the additional barriers was part of a legal strategy to avoid identifying them early so that the defendant would not have time to remedy them and moot the case. Id. at n.7. Thereafter, while deciding cross-motions for summary judgment, the district court refused to consider the additional barriers listed in the expert report but not the complaint, and granted summary judgment in favor of the defendant. Id.

The Ninth Circuit affirmed the district court's decision not to consider the barriers listed in the expert report but not in the complaint based on the pleading standard of Rule 8(a), on the ground that the complaint did not provide the defendant with fair notice of the claims against it. The Court held that:

> Where the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation, we have held that the relevant 'grounds' [on which the claim rests] are the allegedly non-compliant architectural features at the facility. Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006). Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint.

Id. at 908. The Court relied on Pickern, a case finding no fair notice where the complaint listed a number of barriers that a disabled person might confront but did not allege that any of them actually existed at the facility in question, in which the court properly refused to consider an expert report identifying various barriers that did not specify "what allegations [the plaintiff] was including in the suit" and was "not filed and served until after the discovery deadline." Id. at 908-909. The Oliver Court rejected the plaintiff's attempts to distinguish Pickern, and held that:

5

> [i]n general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute. Here, for example, Oliver's expert report included the allegation that the exterior public telephone at the Food 4 Less store lacked an International Symbol of Accessibility, but Oliver did not seek summary judgment regarding this alleged barrier. Thus, Ralphs and Cypress Creek would have had to guess which of the items listed in the expert report were grounds for Oliver's claim, and which, like the exterior public phone, were not. Further, an expert report is typically filed later in the litigation process, after the defendant has already taken steps to investigate and defend against the claims in the complaint.

Id. at 909 (citation omitted).

The Ninth Circuit also rejected the plaintiff's argument that the complaint need not give the defendant notice of every barrier for which the plaintiff seeks relief in light of the rule set forth in Doran v. 7-Eleven, 524 F.3d 1034, 1047 (9th Cir. 2008), that a disabled plaintiff who has encountered at least one barrier at a facility has standing to sue to remove all the barriers at the facility related to his specific disability. The Ninth Circuit held that this premise was based on issues of constitutional standing, not the fair notice requirement of Rule 8, which it held separately requires that "a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." Id. at 909.

Defendants argue that under Oliver, this Court abused its discretion by relying on the NCA Report which listed policies and procedures not specifically enumerated in Plaintiff's TAC to grant class certification. It is undisputed that the TAC itself does not identify the specific policies and procedures listed in the NCA Report or specifically mention the report itself. Instead, the TAC alleges more generally that Defendants have systemically discriminated against the class of plaintiffs by failing to provide adequate accommodations for services, programs and activities (TAC ¶¶ 3, 10), and lists examples of failure to accommodate such as inadequate trails, signage, paths of travel, restrooms, displays, exhibits, publications and other information systems (TAC ¶¶ 3, 4, 12-15, 30-42). The TAC also alleges that Defendants "failed to prepare and implement a comprehensive plan to create access to GGNRA facilities, programs, and services" and lists examples of facilities, programs and services at issue. TAC ¶¶ 23-24. The TAC further alleges that Defendants failed to provide programmatic access to these facilities, services and programs, specifically including trails,

educational exhibits and informational materials, and summaries of accessible features at each park unit. TAC ¶¶ 25-27. Finally, the TAC alleges that Defendants have engaged in new construction and alterations in violation of applicable accessibility standards. TAC ¶ 28. The TAC quotes multiple regulations setting forth requirements under the Rehabilitation Act, some of which reference "policies and practices." See TAC ¶¶ 23, 59 (quoting, among other regulations, 43 C.F.R. § 17.510(a)).

Defendants contend that these allegations relate only to specific barriers and are insufficient under Oliver to provide them with fair notice that any policies and practices, including those in the NCA Report, were being challenged. Defendants therefore argue that the Court abused its discretion in finding commonality based on policies and practices identified in the NCA Report but not in the TAC. See Class Cert. Order at 19, 23-24, 27-28. Defendants also argue that the Court abused its discretion by relying on the NCA Report to find the requirements of Rule 23(b)(2) satisfied. See Class Cert. Order at 32-33.

Plaintiffs counter that Defendants' motion essentially repeats prior arguments made in opposition to class certification, that Oliver is inapplicable, and that in any event they have complied with its interpretation of Rule 8's pleading requirements. Plaintiffs also point out that the class certification order, which referenced the NCA Report, was also based on the individual barriers specifically listed in the TAC as well as more general allegations relating to policies and procedures. See TAC ¶¶ 23, 59-60. Additionally, the Court relied on Defendants' admission that individual barriers must be evaluated by looking at programs as a whole, and that the evidence was sufficient to demonstrate a general policy of disregarding the program access obligations mandated by the Rehabilitation Act and multiple park-wide policy deficiencies. See Order at 15.

### a. Is Oliver Controlling?

Defendants contend that, although Oliver is an ADA case and this is a Rehabilitation Act case, courts apply the same analysis to claims under both statutes, so consideration of class certification should have been limited to the TAC. See Pierce v. County of Orange, 526 F.3d 1190, 1216 n. 27 (9th Cir.2008) ("[t]here is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act"); Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d

7

939, 944 -945 (9th Cir. 2011) ("[t]he legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA"); Zukle v. Regents of the Univ. of Calif., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999). The Court agrees that any differences between ADA and Rehabilitation Act alone do not distinguish Oliver.

Defendants' argument that the procedural context of Oliver on summary judgment, as opposed to class certification, is irrelevant is somewhat less persuasive. Defendants argue the unremarkable proposition that the pleading requirements of Rule 8 are applicable to class actions, but fail to explain why this means that Oliver's analysis of Rule 8 to affirm a summary judgment ruling in a non-class action should be extended to a motion to certify a class. Two decisions mentioning Oliver in the class action context in recent weeks have expressed scepticism that Oliver should be extended to class action pleadings. See Moeller v. Taco Bell Corp., 2011 WL 4634250, *18 (N.D. Cal. Oct. 5, 2011) (Hamilton, J.) (holding that Oliver is not controlling in part because it was not a class action, and applying it to a class action would "arguably vitiate Federal Rule of Civil Procedure 23"); Vallabharpurapu v. Burger King Corp., 2011 WL 4903116, *3 (N.D.Cal. Oct. 14, 2011) (Corley, M.J.) (not reaching the issue of the applicability of Oliver to a discovery dispute but noting "that Oliver is distinguishable as an individual action, as opposed to the putative class action pled here"). Additionally, unlike in Oliver where the plaintiff failed to identify additional known barriers for strategic purposes until summary judgment, here Plaintiffs make a strong argument that the NCA Report and other reports relied on by Plaintiffs as evidence of barriers and deficient policies were not prepared until after the TAC so Plaintiffs could not have alleged these additional deficiencies earlier and it would be inefficient for the them to amend the complaint every time they learn of a new barrier or deficient policy. At the same time, Plaintiffs point out that the TAC did identify a lack of policies and plans to achieve proper access, which the NCA Report was subsequently prepared in order to address. See TAC ¶¶ 23, 59. Further, in contrast to the summary judgment stage of litigation in Oliver, the NCA Report was identified in discovery responses and relied on at the earlier, class certification stage of this case. See Dkt. # 87-10 at 5-6.

1  This Court is skeptical that Oliver's pleading requirement for an individual action should be
2  extended mechanically to class action pleadings such as the one at issue. That approach would seem
3  to convert a class action complaint, intended as a vehicle for streamlining the aggregation of
4  multiple individuals' similar claims, into an unwieldy pleading that is anything but a "short and plain
5  statement of the claim." Fed. R. Civ. Proc. 8(a)(2). Plaintiffs seeking class-wide relief to address
6  pervasive access barriers, lack of program access and deficient policies across several locations
7  rooted in overarching common deficiencies in plans and policies would face a daunting task, as the
8  class representatives might not know the details of each deficiency at the outset. The result would
9  be that the more pervasive and egregious the violations due to a fundamental refusal to comply with
10 disability rights obligations, the higher the pleading hurdle would be. However, because Oliver's
11 holding is not expressly limited to individual actions, this Court will not rule out its application to
12 this class action without further direction from the Ninth Circuit.

13 In addition to the potentially distinguishing features of Oliver discussed above, Plaintiffs also
14 argue that Oliver is at odds with the Ninth Circuit's *en banc* decision in Skaff v. Meridien North
15 America Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007), an earlier decision addressing standing
16 and setting forth the Rule 8 standard for notice pleading in ADA cases. There, in the context of a fee
17 motion following settlement of an ADA claim, the Ninth Circuit reversed a district court's
18 determination that the plaintiff had not adequately pled that he encountered certain barriers to access
19 where he alleged generally that he encountered "numerous other barriers to disabled access,
20 including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access."
21 Id. at 836. The Ninth Circuit held that this was sufficient to give the defendant notice of the injury
22 the plaintiff suffered, and "at the pleading stage, established Skaff's standing to sue for violations of
23 the ADA." Id. at 841. In Skaff, the Ninth Circuit refused to interpret Rule 8 to impose a heightened
24 pleading standard by requiring "ADA plaintiffs to plead the existence of accessibility barriers in
25 specific detail and to support such pleadings with evidence that the plaintiff encountered those
26 barriers." Id. at 841. The Court explained that concerns about the specificity of a complaint are
27 normally resolved through discovery and a pre-trial order. Id. at 841-43. While there may be some
28 tension between the Ninth Circuit's Skaff and Oliver decisions, Oliver is the Ninth Circuit's most

1 recent case on pleading in the disability access context, and therefore cannot simply be ignored as
2 contrary to Skaff.

3 Plaintiffs' argument that Oliver does not apply because it is inconsistent with Chapman v. Pier
4 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. Jan. 7, 2011) (*en banc*), an ADA case addressing
5 standing, fails for similar reasons. There, the Ninth Circuit held that an individual ADA plaintiff
6 with standing as to one barrier in a place of accommodation may challenge all barriers related to his
7 disability that he is likely to encounter even if he has not personally encountered them. Id. at 950-
8 52. The Ninth Circuit concluded that to hold otherwise would require plaintiffs to challenge
9 multiple barriers in the same facility controlled by the same entity related to the same disability in
10 separate lawsuits. Id. at 953. Plaintiffs contend that Oliver is counter to the Ninth Circuit's
11 reasoning in Chapman regarding the impracticality of requiring multiple lawsuits for multiple
12 barriers, and that it should not be applied to require that all actionable barriers or policies be
13 specifically alleged in a complaint. However, Chapman addresses standing, not Rule 8 pleading.

14 Recent cases applying Oliver differ in their analysis. For example, in Chapman v. Stations,
15 Inc., 2011 U.S. Dist. LEXIS 114750 (E.D.Cal. Oct. 5, 2011), a district court relied on Oliver to grant
16 summary judgment to the defendants on ADA claims based on barriers listed in an expert report.
17 The complaint generally alleged the existence of barriers, and the plaintiff later submitted an expert
18 report following a site inspection that listed 14 specific barriers, only one of which was contained in
19 the complaint. Id. at *3-4. The court granted summary judgment as to the one barrier in the
20 complaint because it did not implicate the ADA, and as to the 13 others because they were not
21 contained in the complaint as required by Oliver. The court rejected the plaintiff's arguments that
22 Oliver is contrary to previous opinions (including Skaff and Chapman, the cases also relied on by
23 Plaintiffs here) and "no other case has required an ADA plaintiff to identify in their complaint every
24 barrier that they wish removed." Id. at *14. However, as an alternative holding, the court also
25 substantively addressed why summary judgment of the claims relating to barriers identified only in
26 the expert report was appropriate on other grounds.

27 On the same day that the order granting summary judgment was filed in Chapman v. Stations,
28 the court in Moeller v. Taco Bell Corp., 2011 WL 4634250 (N.D.Cal. Oct. 5, 2011) issued Findings

10

1  of Fact and Conclusions of Law following a 2004 order certifying an ADA class of mobility
2  impaired individuals and appointing a special master, a 2009 order denying summary judgment and
3  setting a trial as to one exemplar restaurant, and a 2011 court trial relating to violations at the
4  exemplar restaurant. The court rejected Taco Bell's post-trial argument that, in light of Oliver, only
5  the two barriers originally alleged in the complaint were actionable. Id. at *18. The court held that
6  Oliver was not controlling because it was not a class action, and applying it to the class action
7  context would "arguably vitiate Federal Rule of Civil Procedure 23." Id. The court held that, "at
8  most, Oliver would require the named plaintiffs to list the barriers they themselves encountered,
9  which they have done" because they would not necessarily know which other barriers posed
10 problems for unnamed class members. Id. While this statement is helpful to Plaintiffs, Moeller is
11 procedurally distinguishable from this case which has been pending for three years and has just
12 reached class certification. The Moeller court rejected any argument based on lack of fair notice
13 because the case had been pending for nine years, during depositions plaintiffs described multiple
14 barriers which the defendant acknowledged in its opposition to class certification, and the defendant
15 had the expert report of the jointly retained special master, Plaintiff's separate expert, and its own
16 contractors. The court concluded in Moeller that: "For TBC to argue, based on the facts in Oliver,
17 that it was not placed on notice of the claimed violations because not all the barriers were listed in
18 the FAC, is to elevate form over substance." Id. Finally, the court relied on the fact that the joint
19 pre-trial statement and order listing multiple barriers had been in place for a year and superceded the
20 complaint. Id. at *19. In the absence of controlling authority as to Oliver's application to class
21 actions, Oliver arguably announced a material change in applicable law.

    **b. Does Oliver Require Reconsideration of Class Certification or Amendment of the Complaint?**

24  Based on Oliver, Defendants argue that they did not have fair notice and have been prejudiced
25 by the Court's consideration of matters outside the pleadings because they based their discovery and
26 defenses on the individual access barrier claims in the TAC, not the policies identified in the NCA
27 Report. They contend that, had they focused on opposing the policies in the NCA Report, they
28 would have argued that these policies would not affect every class member and so are insufficient

under Wal-Mart. Defendants also contend that they would have argued "more vigorously" that the NCA Report was inadmissible at the class certification stage if they had known it was at issue. However, to avoid a waiver argument, Defendants also contend that they challenged Plaintiffs' reliance on the NCA Report in footnotes of their brief in opposition to class certification and in their supplemental briefing following Wal-Mart, thereby contradicting their argument regarding lack of notice.

Defendants' arguments that they lacked notice that policies and procedures (particularly those in the NCA Report) were at issue are unpersuasive for a number of reasons. First, the Memorandum of Understanding ("MOU") executed by the parties in November 2008, over three years ago, specifically addressed a self-evaluation process and the development of a transition plan that would involve a review of "all existing park-wide GGNRA policies and procedures for accessibility compliance under applicable law, as well as site-specific policies and procedures." See Dkt. #33 (Memorandum of Understanding) at § III.A. Additionally, the TAC does generally reference deficient policies and procedures (see TAC ¶¶ 23, 59), so Defendants had notice in the pleading that policy and/or failure to make policy claims were also in play, and the NCA Report and other evidence simply reaffirms the existence of barriers and policies (or lack thereof) previously identified in the TAC. Finally, Plaintiffs relied heavily on the NCA Report in their class certification motion, a significant portion of the discussion during the motion hearing was focused on the report, and the Court gave strong indications that it intended to rely on this evidence in evaluating class certification. See Transcript of April 5, 2011 Hearing on Class Certification Motion at 27-37.

Defendants also argue that the Court erred in relying on the NCA Report in its class certification order because the document is inadmissible under Federal Rules of Evidence ("FRE") 407 and 408. However, during class certification, Defendants did not file any objections to evidence or move to strike the NCA Report, and acknowledged during oral argument that their footnotes generally referencing objections were insufficient. Id. at 31-32. Nonetheless, Defendants now contend that contentions in footnotes of their class certification opposition brief and in their supplemental brief following Wal-Mart were sufficient to preserve objections. The Court disagrees

12

1 for a number of reasons. See Kirola v. City of San Francisco, 2011 WL 250070, *2 (N.D.Cal. 2011)
2 ("merely mentioning an issue in a footnote is insufficient to present the matter for the Court's
3 consideration"); see also Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.4 (9th Cir. 1996) ("The
4 summary mention of an issue in a footnote, without reasoning in support of the appellant's argument,
5 is insufficient to raise the issue on appeal.").

6 To support their admissibility argument, Defendants cite the following portions of the their
7 briefs: (1) Class Certification Opposition at footnote 1 (challenging Plaintiffs' characterization of
8 NCA as "Defendants' own expert" and refusing to "concede that NCA's methods are reliable (for
9 Daubert purposes), that their work product is admissible as part of this litigation, nor that NCA's
10 conclusions are consistent with or reflective of the requirements of Section 504 of the Rehabilitation
11 Act"); (2) Class Certification Opposition at footnote 14 (challenging a *different* report assessing the
12 GGNRA website as irrelevant and inadmissible under FRE 702(1) and (2); (3) Supplemental Brief in
13 Opposition to Class Certification at 5 (challenging NCA Report as insufficient proof that Defendants
14 operated under a general policy of discrimination but not directed to its admissibility); and (4)
15 Supplemental Brief in Opposition to Class Certification at 8 (challenging NCA Report as
16 insufficient evidence to satisfy Rule 23(b)(2) but not objecting to admissibility). None of these
17 references to the NCA Report in Defendants' prior briefs cite FRE 407 or 408, or indicate a formal
18 objection to the admissibility of the evidence. See Local Rule 7-3 ("Any evidentiary and procedural
19 objections to the motion must be contained within the brief or memorandum."). Therefore, the
20 objections were waived.

21 Even if Defendants' objections to admissibility of the NCA Report were not waived, they are
22 without merit. First, Defendants argue that the NCA Report is a "draft" so its conclusions are
23 tentative, but Defendants fail to acknowledge the sworn testimony of Sherril York, the individual in
24 charge of the NCA's assessment and planning, that the substance of the NCA Report will not
25 change. See Order at 6 (citing Elsberry Decl. Ex. G (York Depo.) at 148-49.

26 Second, Defendants contend that the NCA Report is an inadmissible settlement communication
27 under FRE 408. They cite Simonelli v. Univ. of Cal.-Berkeley, 2008 U.S. Dist. LEXIS 44589, *22
28 (N.D.Cal. Feb. 14, 2008), where the court found that it had properly excluded evidence of partial

1  settlements pursuant to FRE 408 in analyzing a motion for new trial. Defendants also cite <u>Lyondell
2  Chem. Co. v. Occidental Chem. Co.</u>, 608 F.3d 284, 294-96, 300 (5th Cir. 2010), where the Fifth
3  Circuit held that the district court erred in a CERCLA case by admitting reports relating to
4  contamination at another location that the court used to develop an intermediate estimate of waste in
5  the current dispute. Defendants point out that the issue is not whether the report was kept
6  confidential, but whether it was a statement made in compromise negotiations regarding the claim.
7  However, Defendants admittedly retained NCA before this litigation began and independently
8  discussed NCA's development of written reports based on a comprehensive evaluation of GGNRA
9  facilities and park partners consistent with 43 C.F.R. § 17.510 (describing government agency self-
10 evaluation process). <u>See</u> Dkt. # 33 at § III.A. It would defy logic to hold that reports – conducted
11 by NCA pursuant to an independent agreement with Defendants predating this litigation in order to
12 comply with federal requirements regarding self-evaluation, albeit completed after litigation
13 commenced – are inadmissible settlement negotiation statements, even if also relied on by
14 Defendants to try to facilitate settlement of Plaintiffs' claims. Plaintiffs' position that these
15 documents are admissible as non-hearsay party admissions under FRE 801(d)(2)(D) is also
16 persuasive.

17    Third, Defendants contend that the NCA Report is inadmissible evidence of a subsequent
18 remedial measure under FRE 407 because it was an effort to improve accessibility. They point out
19 that this exclusionary rule is not limited to cases where mental state is at issue. <u>See Gauthier v.
20 AMF, Inc.</u>, 788 F.2d 634, 636-37 (9th Cir. 1986). Plaintiffs counter that the NCA Report is not
21 evidence of a subsequent remedial measure of the type contemplated by the exclusionary rule
22 because it was required by federal regulations relating to self-evaluation. <u>See</u> 43 C.F.R. § 17.510.
23 Plaintiffs rely on <u>In Re Aircrash in Bali, Indonesia</u>, 871 F.2d 812, 816-17 (9th Cir. 1989), where the
24 Ninth Circuit held that a Federal Aviation Administration report prepared after a plane crash – in
25 which the defendant participated but did not initiate – did not constitute a subsequent remedial
26 measure because the defendant was "legally obligated to cooperate with the FAA's investigation."
27 <u>Id</u>. Defendants argue that in contrast here, they initiated and voluntarily participated in preparation
28 of the NCA Report and it was not mandated by an outside federal agency. However, the fact that

14

1  Defendants failed to comply with federal self-reporting and transition plan requirements for decades
2  after the regulations took effect does not mean that the requirements were not mandatory.
3  Additionally, footnote 2 of In Re Aircrash cites cases holding that subsequent remedial measures
4  include "only the actual remedial measures themselves and not the initial steps toward ascertaining
5  whether any remedial measures are called for." Id. at n.2. Under the persuasive rationale of these
6  cases, the NCA Report itself was not a "subsequent remedial measure" because it constituted a self-
7  analysis of deficiencies rather than remedial measures taken, and in fact Defendants continue to
8  dispute whether anything needs to be done as a result.

9        For all of the foregoing reasons, the Court determines that Defendants had fair notice that the
10 policies and procedures in the NCA Report were at issue in this litigation, that Defendants waived
11 their evidentiary objections to the report, and that the report is admissible. Therefore, to the extent
12 that Oliver is applicable, it does not warrant reconsideration of the Court's class certification
13 determination. However, as explained above, the Court is not certain how the Ninth Circuit will
14 apply the pleading requirements of Oliver in a class action context such as this one. Therefore, in an
15 abundance of caution, given that amendment of the complaint will cure any such issue and that leave
16 to amend is freely given, Plaintiffs are ordered to amend their complaint to allege the deficient
17 policies and procedures they are challenging with further specificity. See Anderson v. U.S. Dep't of
18 Housing & Urban Dev., 554 F.3d 525, 528-29 (5th Cir. 2008) (holding that district court's error in
19 certifying class based solely on an allegedly discriminatory voucher program not mentioned in the
20 operative complaint and alleging "a totally different course of conduct" involving the demolition of
21 public housing buildings could be remedied on remand simply by allowing leave to amend).
22 Specifically, Plaintiffs shall set forth the barriers, policies and procedures – previously referenced
23 but not described in detail in their TAC – that they contend are actionable under the Rehabilitation
24 Act, as evidenced by the NCA surveys and the NCA Report. The Court disagrees with Defendants
25 that allowing an amendment at this stage of the litigation would result in prejudicial delay, change
26 the nature of the litigation, require additional discovery, or be futile. Leave to amend is freely
27 granted, even as late as during trial to conform to proof. See Galindo v. Stoody Co., 793 F.2d 1502,
28

15

1512-13 (9th Cir.1986). Further, because Defendants had notice that policies and practices were at issue for the reasons discussed above, the Court will not re-open discovery now.

### B. Reconsideration Based on Ellis v. Costco Wholesale Corp.

Defendants also argue that the Ninth Circuit's recent decision in Ellis v. Costco Wholesale Corp., 2011 U.S. App. LEXIS 19060 (9th Cir. Sept. 16, 2011) requires reconsideration of the class certification order. Defendants argue that Ellis is the Ninth Circuit's first articulation of the class certification standard following Wal-Mart, and that it abrogates all prior Ninth Circuit Rule 23 decisions taking a different approach, so the Court erroneously relied on cases applying an "outdated" class certification standard in its Order.

In Ellis, the Ninth Circuit reviewed a district court's certification of a Rule 23(b)(2) class of female employees alleging gender discrimination against their employer. The Ninth Circuit held that, under Wal-Mart and other precedent, district courts must engage in a "rigorous analysis" of each of the Rule 23(a) factors when ruling on a motion for class certification. Id. at *19. The Ninth Circuit vacated and remanded the district court's finding of commonality for failure to conduct the requisite "rigorous analysis" to determine whether there were common questions of law and fact among the claims. The Ninth Circuit held that the district court erred in relying on its conclusion as to the admissibility of Plaintiff's expert evidence, without then proceeding to resolve disputed issues between conflicting admissible expert reports through a rigorous analysis of whether the plaintiffs' expert declarations supported a common pattern and practice that could affect the class as a whole, and thus a determination of whether there was "significant proof that [Costco] operated under a general policy of discrimination." Id. at *21-32 (quoting Wal-Mart, 131 S.Ct. at 2553). The Ninth Circuit also vacated the district court's decision as to typicality because it failed to consider the effect of defenses unique to the named plaintiffs' claims on the question. Id. at *32-35. Finally, the Ninth Circuit vacated the district court's Rule 23(b)(2) determination because it erroneously focused on evidence of the plaintiff's subjective intent, as opposed to whether monetary relief could be granted absent "individualized determinations of each employee's eligibility for [monetary damages]." Id. at *41 (quoting Wal-Mart at 2560). It pointed out that, under Wal-Mart, the "key to

the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted." Id. (quoting Wal-Mart at 2557).

As the above synopsis makes clear, Ellis is simply the Ninth Circuit's first application of Wal-Mart in an almost identical employment discrimination context, and not a material change in applicable law that warrants reconsideration. Its standard is not more stringent than Wal-Mart, and its facts are not more directly on point because it is also an employment discrimination as opposed to a disability rights case. Because this Court carefully considered the impact of Wal-Mart on the proposed class in this case, Defendants' request for reconsideration based on Ellis is an improper attempt to re-argue previous arguments made in opposition to class certification because they think the Court misapplied Wal-Mart. The Court DENIES Defendants' motion to reconsider based on Ellis.

**IT IS SO ORDERED.**

Dated: November 15, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge