```
 1                          PAGES 1 - 36

 2                   UNITED STATES DISTRICT COURT

 3                  NORTHERN DISTRICT OF CALIFORNIA

 4      BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE JUDGE

 5   LORI GRAY, ET AL,                  )
                                        )
 6                   PLAINTIFFS,        )
                                        )
 7     VS.                             ) NO. C 08-00722 EDL
                                        )
 8   GOLDEN GATE NATIONAL RECREATION    )
     AREA, ET AL.,                      )
 9                                      )  SAN FRANCISCO, CALIFORNIA
                     DEFENDANTS.        )  TUESDAY
10                                      )  MAY 22, 2012
     _____)  9:00 O'CLOCK A.M.
11

12                   TRANSCRIPT OF PROCEEDINGS

13   APPEARANCES:

14   FOR PLAINTIFFS:          DRA DISABILITY RIGHTS ADVOCATES
                              2001 CENTER STREET, FOURTH FLOOR
15                            BERKELEY, CALIFORNIA 94704-1204 USA
                              510-665-8511
16                        BY: LAURENCE PARADIS, ESQUIRE
                              STUART SEABORN, ESQUIRE
17                            RON ELSBERRY, ESQUIRE

18
     FOR DEFENDANTS:          U.S. DEPARTMENT OF JUSTICE
19                            CIVIL DIVISION
                              20 MASSACHUSEETS AVENUE, NW
20                            WASHINGTON, DC 20530
                          BY: BONNIE J. PROBER, TRIAL ATTORNEY
21                            JONATHAN COOPER, ESQUIRE
                              BRIAN KENNEDY, ESQUIRE

22
     REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR
23                  OFFICIAL REPORTER - US DISTRICT COURT
                    COMPUTERIZED TRANSCRIPTION BY ECLIPSE
24

25
```

MAY 22, 2012                              9:00 O'CLOCK  A.M.


P R O C E E D I N G S

**THE CLERK:**  CALLING CASE NUMBER IT'S AN 8-CV-722,
GRAY, ET AL VERSUS GOLDEN GATE NATIONAL RECREATIONAL AREA, ET
AL.

COUNSEL, PLEASE STEP FORWARD AND STATE YOUR
APPEARANCES FOR THE RECORD.

**MR. ELSBERRY:**  GOOD MORNING, YOUR HONOR.  RON
ELSBERRY, LARRY PARADIS AND STUART SEABORN FOR PLAINTIFFS.

**THE COURT:**  GOOD MORNING.

**MR. COOPER:**  GOOD MORNING, YOUR HONOR.  MY NAME IS
JONATHAN COOPER FROM THE DEPARTMENT OF JUSTICE FOR THE
DEFENDANTS.  WITH ME AT COUNSEL'S TABLE ARE CO-COUNSEL BONNIE
PROBER AND BRIAN KENNEDY AND REPRESENTATIVES FROM THE GOLDEN
GATE NATIONAL RECREATION AREA, DON MONELL (PHONETIC) AND RICHARD
D'ALETO (PHONETIC).

**THE COURT:**  GOOD MORNING. WELL, LET ME SAY IT IS
CORRECT THAT YOU'RE ALLOWED TO BRING A MOTION TO DISMISS.
THERE'S NO SPECIFIC PROVISION ABOUT WHEN, BUT IT'S CERTAINLY, BY
FAR, THE BETTER PRACTICE FROM EVERY POINT OF VIEW CASE
MANAGEMENT NOT TO RAISE THRESHOLD ISSUES AFTER SEVERAL YEARS OF
LITIGATION THAT COULD HAVE BEEN RAISED.

THERE'S NOTHING NEW.  NOTHING'S CHANGED.  ALL OF
THESE THINGS COULD HAVE BEEN RAISED EARLIER. AND THE COURT AND

KATHY WYATT, CSR, RMR (925) 212-5224

```
1    THE PARTIES HAVE, YOU KNOW, EXPENDED A TREMENDOUS AMOUNT OF TIME

2    DEALING WITH ISSUES THAT SHOULD BE HANDLED SUBSEQUENT TO THESE

3    THRESHOLD ISSUES.

4           SO I DON'T KNOW WHAT THE GOVERNMENT REALLY IS

5    THINKING ABOUT BRINGING THESE NOW. AND IT'S REALLY IN

6    CONTRAVENTION OF THE MOST FUNDAMENTAL RULE OF CIVIL PROCEDURE,

7    NUMBER ONE:  JUST, SPEEDY AND INEXPENSIVE. IF YOU HAD PROBLEMS

8    WITH THE PLAINTIFFS' STANDING AND OTHER THINGS OF THAT NATURE,

9    WHY WEREN'T THEY BROUGHT UP BEFORE?

10          MR. COOPER:  RESPECTFULLY, YOUR HONOR, THERE'S TWO

11   REASONS. FIRST, WHEN THE LITIGATION WAS FIRST FILED BACK IN

12   2008, THE PARTIES AGREED AT THE OUTSET TO ENTER INTO SETTLEMENT

13   NEGOTIATIONS IMMEDIATELY.  AND AS PART OF THAT AGREEMENT THE

14   DEFENDANTS AGREED TO ANSWER THE COMPLAINT RATHER THAN SEEK TO

15   DISMISS, AND THEN WE ENGAGED IN TWO YEARS OF SETTLEMENT

16   NEGOTIATION.

17          SO THAT'S WHY THIS -- THAT'S WHY --

18          THE COURT:  AND THAT TAKES US UP TO HOW MANY YEARS

19   AGO?

20          MR. COOPER:  THAT WOULD HAVE TAKEN US UP TO 2010, I

21   THINK.

22          THE COURT:  SO TWO FULL YEARS.

23          MR. COOPER:  AND THEN, THE SECOND MORE PRIMARY REASON

24   I WOULD THINK IS THAT, ESPECIALLY WITH A LOT OF STANDING

25   ALLEGATIONS AND SOME OF THE OTHER ISSUES WE RAISED IN THIS
```

1    BRIEF, INCLUDING WEBSITE ALLEGATIONS, THINGS LIKE THAT, THEY

2    WEREN'T INCLUDED IN THE COMPLAINT PRIOR TO THE FOURTH-AMENDED

3    COMPLAINT.

4              SO, FOR EXAMPLE, THE THIRD-AMENDED COMPLAINT WHICH

5    WAS FILED BACK IN 2010, I THINK IT WAS, RELATED BARRIERS IN THE

6    NAMED PLAINTIFFS' EXPERIENCES.  IT DIDN'T INCLUDE THESE LISTS OF

7    BARRIERS THAT AREN'T TIED TO ANY SPECIFIC INDIVIDUAL NAMED

8    PLAINTIFF; AREN'T TIED TO ANY SPECIFIC CLASS MEMBER; OR EVEN

9    TIED TO ANY HUMAN BEING.  IT'S JUST LISTS OF BARRIERS.

10             AND THOSE WEREN'T INCLUDED UNTIL THE FOURTH-AMENDED

11   COMPLAINT, WHICH WAS FILED, I GUESS IT'S A FEW MONTHS AGO NOW.

12   AND OUR MOTION TO DISMISS IS IN RESPONSE TO THAT MOST RECENT

13   COMPLAINT.

14             SO THESE -- NONE OF THESE ISSUES COULD HAVE BEEN

15   RAISED BEFORE.

16             **THE COURT:**  YEAH.  WELL, HOW ABOUT THE ONE THAT

17   THERE'S NO PRIVATE RIGHT OF ACTION?

18             **MR. COOPER:**  THAT IS AN ISSUE THAT CERTAINLY COULD

19   HAVE BEEN RAISED BEFORE. WE WRESTLED WITH WHEN TO BRING THAT.

20   YOU KNOW, WE COULD BRING IT AT -- BECAUSE, AGAIN, WE AGREED TO

21   ENTER SETTLEMENT NEGOTIATIONS AND NOT MOVE TO DISMISS EARLY ON.

22             **THE COURT:**  WELL, IT'S BEEN TWO YEARS SINCE THEN IN

23   WHICH THE COURT HAS RULED ON CLASS CERT MOTION AND NUMEROUS

24   OTHER THINGS.  SO PUTTING ASIDE THE SETTLEMENT, WHAT HAVE YOU

25   BEEN DOING THE LAST TWO YEARS?  AND WHY WOULD YOU NOT RAISE

1   THAT?

2            AND WHY DOES THE COURT BOTHER TO HOLD CASE MANAGEMENT

3   CONFERENCES AND NOT HAVE THE GOVERNMENT BRING UP THAT THEY ARE

4   CONSIDERING WHEN THEY THINK IT'S BEST TO BRING THESE THINGS AND

5   GET THE COURT'S INPUT?

6            **MR. COOPER:**  WELL, YOUR HONOR, AS YOU KNOW, WE WERE

7   ENGAGED IN CLASS CERTIFICATION ARGUMENTS FOR ABOUT A YEAR AND --

8            **THE COURT:**  NORMALLY COMES WELL AFTER YOU SAY THERE'S

9   NO PRIVATE CAUSE OF ACTION, SO I HAVE HEARD NO GOOD REASON SO

10  FAR.

11           **MR. COOPER:**  WELL, IT CERTAINLY USUALLY DOES GET

12  ARGUED BEFORE, BUT, AGAIN --

13           **THE COURT:**  ALWAYS IN MY EXPERIENCE OF 14 YEARS.

14  THIS IS THE FIRST TIME THAT I'VE SEEN SOMETHING LIKE THIS.

15           **MR. COOPER:**  WELL, AS YOUR HONOR NOTED AT THE

16  BEGINNING, RULE 12 (H) ALLOWS THESE MOTIONS TO BE BROUGHT EVEN

17  AT THIS JUNCTURE.  AND GIVEN THAT IT ALSO WOULD HAVE BEEN

18  APPROPRIATE TO BRING SUCH AN ARGUMENT AT THE SUMMARY JUDGMENT

19  STAGE, WHICH HAS BEEN PUT ON THE SCHEDULE FOR MONTHS FROM NOW,

20  IT MAKES JUST AS MUCH SENSE TO RAISE IT NOW AS IT WOULD HAVE

21  MADE TO RAISE IT MONTHS FROM NOW IN THE SUMMARY JUDGMENT STAGE

22  AND DELAY DISCUSSING THE ISSUE EVEN FURTHER.

23           **THE COURT:**  WELL, I WOULD LIKE TO KNOW -- HENCEFORTH,

24  I'M REQUIRING THE PARTIES TO ADVISE ME OF ANY ADDITIONAL

25  MOTIONS, GROUNDS, CHALLENGES THAT THEY INTEND TO BRING.

1          **MR. COOPER:**  CERTAINLY, YOUR HONOR.

2          **THE COURT:**  ASAP, OR THEY ARE WAIVED.

3          **MR. COOPER:**  I'M NOT CURRENTLY AWARE OF ANY OTHER

4  THAN WHAT WE'RE GOING TO RAISE, IF IT COMES TO THAT, AT A

5  SUMMARY JUDGMENT MOTION.

6          **THE COURT:**  OKAY. WELL, I WANT A PREVIEW OF WHAT

7  THOSE ISSUES ARE.

8          **MR. COOPER:**  OF WHAT THE ARGUMENTS WILL BE AT THE

9  SUMMARY JUDGMENT STAGE?

10          **THE COURT:**  YES.  NOT NOW, BUT I THINK WE NEED ONE

11  WELL IN ADVANCE.

12          I DON'T WANT TO BE SANDBAGGED AGAIN.  AND I THINK

13  IT'S REALLY -- IT'S VERY TROUBLING TO SEE THAT THE GOVERNMENT

14  WOULD WAIT ON THESE THINGS AND WASTE SO MANY RESOURCES OF THE

15  PARTIES, POTENTIALLY.

16          **MR. COOPER:**  WELL, YOUR HONOR, AS I SAID BEFORE --

17          **THE COURT:**  AND THE COURT.

18          **MR. COOPER:**  -- WE WEREN'T TRYING TO WASTE RESOURCES.

19  WE WERE ENGAGED IN GOOD FAITH SETTLEMENT NEGOTIATIONS FOR YEARS

20  TO AVOID ANY OF THIS.

21          **THE COURT:**  THAT WAS THE FIRST TWO YEARS OR SO.  THAT

22  DOESN'T HAVE ANYTHING TO DO WITH SINCE THAT STOPPED.  THAT HAS

23  NOTHING TO DO WITH THE LAST TWO YEARS, WHICH HAVE BEEN A LONG

24  TWO YEARS AND --

25          **MR. COOPER:**  THOSE HAVE BEEN MOSTLY FOCUSED ON CLASS

```
 1    CERTIFICATION.

 2              THE COURT:  BUT WHY?  IN OTHER WORDS, THAT MAKES NO

 3    SENSE.

 4              OKAY.  SO I THINK THE GOVERNMENT'S POSITION IN TERMS

 5    OF SOUND CASE MANAGEMENT AND JUST, SPEEDY AND INEXPENSIVE IS

 6    VERY TROUBLING. THAT'S NOT GOING TO AFFECT MY CONSIDERATION OF

 7    THE MERITS, WHICH I WILL CONSIDER.  BUT WITHOUT JUST ON THE

 8    MERITS.

 9              BUT I REALLY INSIST THAT FROM NOW ON YOU BE

10    TRANSPARENT AS TO -- AND MAYBE I SHOULD TELL ALL THE OTHER

11    JUDGES, TOO.  IT'S NEVER BEEN NECESSARY BEFORE -- BUT TO AMEND

12    THEIR CASE MANAGEMENT ORDERS TO ORDER THRESHOLD DECISIONS BE

13    RAISED AT THE BEGINNING.

14              MR. COOPER:  CERTAINLY, YOUR HONOR.  I MEAN --

15              THE COURT:  IT IS AN EXTREMELY WASTEFUL WAY TO DO

16    THINGS.

17              MR. COOPER:  CERTAINLY, YOUR HONOR.  IT IS A STRANGE

18    PROCEDURE IN THIS CASE --

19              THE COURT:  IT IS.

20              MR. COOPER:  -- BECAUSE OF THE LATE AMENDED COMPLAINT

21    WITH THE ADDITIONAL ALLEGATIONS COMING IN.

22              THE COURT:  I DON'T THINK THAT THAT REALLY EXPLAINS

23    MOST OF WHAT YOU BROUGHT UP FOR THE FIRST TIME IN THIS.  AND I

24    FIND THAT IT DOESN'T.

25              SO ALL RIGHT. WELL, LET ME ASK -- LET'S START WITH
```

1  STANDING.  I UNDERSTAND THE ARGUMENT THAT THIS STATUTE, UNLIKE

2  THE ADA, DOESN'T HAVE AN EXPRESS FUTILE GESTURE LANGUAGE.  BUT

3  THE SAME IS TRUE ABOUT OTHER ANTIDISCRIMINATION STATUTES LIKE

4  TITLE VII EMPLOYMENT WHERE THE COURTS HAVE APPLIED -- AND THE

5  SUPREME COURT, AND THE NINTH CIRCUIT INCLUDED -- THE CONCEPT OF

6  ESSENTIALLY THE SAME THING:  FUTILE GESTURE, DISCOURAGED

7  APPLICANT.  IF SOMEBODY WAS DETERRED BY KNOWING THAT THEY

8  COULDN'T GET HIRED BECAUSE THEY WERE, SAY, AFRICAN-AMERICAN OR A

9  WOMAN, SO THEY DIDN'T FORMALLY APPLY, OR SAY FOR A PROMOTION,

10  THAT DIDN'T DEPRIVE THEM OF STANDING BECAUSE THEY KNEW IT WOULD

11  BE A FUTILE GESTURE.

12          SO THAT DOCTRINE, EVEN WITHOUT STATUTORY LANGUAGE, IS

13  WELL-ESTABLISHED IN THE VARIOUS STATUTES.  SO WHY DOESN'T THAT

14  APPLY HERE WHERE THE PLAINTIFFS HAVE SAID BECAUSE, FOR

15  EXAMPLE -- AND THIS IS JUST SOME OF THE EXAMPLES -- COULDN'T

16  FIND AN ACCESSIBLE RESTROOM, HAVEN'T RETURNED.

17          **MR. COOPER:**  I THINK THE BEST THING TO LOOK TO, YOUR

18  HONOR, WOULD BE THE SUPREME COURT'S DECISION IN BROOKS, WHICH WE

19  CITED IN OUR BRIEFS, WHICH WAS CONSIDERING DIFFERENT LANGUAGE

20  BETWEEN TITLE VII AND THE AGE DISCRIMINATION EMPLOYMENT ACT.

21          AND IT NOTED THAT CERTAIN LANGUAGE, IF I RECALL

22  CORRECTLY, IN THE AGE DISCRIMINATION EMPLOYMENT ACT ALLOWED

23  CERTAIN CLAIMS TO BE BROUGHT.

24          BUT THAT CERTAIN LANGUAGE WAS NOT IN TITLE VII. AND

25  BOTH STATUTES HAVE BEEN AMENDED IN THE SAME ACT.  AND THE COURT

1   FOUND THAT WAS SIGNIFICANT THAT WHEN CONGRESS AMENDS TWO

2   STATUTES IN THE SAME ACT AND PROVIDES CERTAIN PERMISSIVE

3   LANGUAGE IN ONE, BUT NOT IN THE OTHER, YOU SHOULD NOT READ --

4   COURT'S SHOULD NOT READ INTO THE OTHER STATUTE THE LANGUAGE

5   THAT'S NOT THERE.

6            AND IN THIS INSTANCE WHEN THE ADA WAS PASSED AND

7   TITLE III OF THE ADA, WHICH INCLUDES THE FUTILE GESTURES

8   LANGUAGE WAS ENACTED, SECTION 504 -- EXCUSE ME -- THE

9   REHABILITATION ACT WAS ALSO AMENDED AT THAT TIME, AND CONGRESS

10  DID NOT INCLUDE IN THE REHABILITATION ACT THAT LANGUAGE, NOR HAS

11  IT SINCE EVER ADDED THAT LANGUAGE.

12       **THE COURT:**  SO WAIT. WHEN YOU SAY IT WAS AMENDED AT

13  THE SAME TIME, YOU MEAN IN THE SAME ACT?

14       **MR. COOPER:**  IN THE SAME ACT, CORRECT.  AND THE

15  CITATION'S IN OUR BRIEF.  I CAN PULL IT OUT, IF YOU LIKE.

16       **THE COURT:**  NO.

17       **MR. COOPER:**  AND THE REHABILITATION ACT HAS SINCE

18  BEEN AMENDED,INCLUDING 504 ITSELF TO, IN CERTAIN INSTANCES,

19  SPECIFICALLY INCORPORATE ADA STANDARDS.  THIS IS NOT ONE OF THE

20  STANDARDS THAT HAVE BEEN SPECIFICALLY INCORPORATED.

21            SO, AGAIN, IT SHOWS CONGRESSIONAL INTENT NOT TO

22  INCLUDE THE SPECIFIC LANGUAGE FROM THE ADA IN THE REHABILITATION

23  ACT.

24       **THE COURT:**  OKAY. AND WHAT'S YOUR RESPONSE ON THAT?

25       **MR. ELSBERRY:**  WELL, CHAPMAN INVOLVED A SINGLE CLAIM

| | |
|---|---|
| 1 | UNDER TITLE III OF THE ADA.  AND THE FUTILE GESTURE LANGUAGE WAS |
| 2 | FOUND IN TITLE III. IT IS NOT IN TITLE II OF THE ADA, JUST AS |
| 3 | IT'S NOT IN THE REHAB ACT. |
| 4 | AND AS YOUR HONOR, I'M SURE, KNOWS THE REHAB SECTION |
| 5 | 504 OF THE REHAB ACT IS OFTEN CONSTRUED SIMILARLY AS TITLE II. |
| 6 | AND DEFENDANTS CITE NO CASE THAT HAS APPLIED A DIFFERENT |
| 7 | STANDARD FOR STANDING IN A DISABILITY ACCESS CASE, DEPENDING ON |
| 8 | WHICH OF THOSE STATUTES YOU'RE SUING UNDER. |
| 9 | **THE COURT:**  SO WHAT YOU'RE SAYING IT'S NOT IN TITLE |
| 10 | II, BUT TITLE II DOES -- ARE THERE CASES WHICH APPLY THE |
| 11 | FUTILITY DETERRENCE DOCTRINE? |
| 12 | **MR. ELSBERRY:**  WELL, IN ESSENCE, IF YOU LOOK AT |
| 13 | ARMSTRONG V. DAVIS, WHICH PRECEDED CHAPMAN, BUT IT WAS A REHAB |
| 14 | ACT CASE UNDER -- AND A TITLE II CASE ABOUT ACCESSIBILITY.  AND |
| 15 | IT DIDN'T SET FORTH EXACTLY THE SAME STANDARD AS CHAPMAN, BUT IT |
| 16 | APPLIED MANY OF THE SAME GENERAL PRINCIPLES THAT WOULD, IN MY |
| 17 | OPINION, INCLUDE THE FUTILITY EXCEPTION. |
| 18 | AND I'D ALSO JUST LIKE TO SAY THAT CHAPMAN HAD A |
| 19 | LENGTHY ANALYSIS OF STANDING. IT REFERRED TO THE FUTILE GESTURE |
| 20 | LANGUAGE EXACTLY ONCE. |
| 21 | **THE COURT:**  THAT'S TRUE. IT HAD MANY, MANY OTHER |
| 22 | REASONS THAT IT TOOK INTO ACCOUNT. |
| 23 | **MR. ELSBERRY:**  RIGHT. |
| 24 | **THE COURT:**  ALL RIGHT. AND WHAT -- BECAUSE, REALLY, |
| 25 | WE SHOULD NOT -- I MEAN, THIS PROCEDURALLY IS VERY INEFFICIENT |

```
1   IN THE EXTREME.  WHAT ARE -- YOU REFERRED IN YOUR BRIEF THAT ON

2   DETERRENCE IF THE ALLEGATIONS WERE INSUFFICIENT, THERE'S BEEN

3   TESTIMONY AT DEPOSITIONS ABOUT DETERRENCE.  WHAT IS THE GIST OF

4   THAT TESTIMONY?  BECAUSE I THINK THIS IS PROBABLY BETTER HANDLED

5   AT A SUMMARY JUDGMENT STAGE.

6              MR. ELSBERRY:  RIGHT. BASICALLY, THERE'S BEEN BOTH

7   DEPOSITION TESTIMONY AS WELL AS DECLARATIONS SUBMITTED IN

8   SUPPORT OF CLASS CERT BY THE NAMED PLAINTIFFS THAT HAVE SAID,

9   FOR EXAMPLE, IF FACILITIES OR PROGRAMS WERE MORE ACCESSIBLE THE

10  PLAINTIFF WOULD RETURN. BUT BECAUSE IT'S NOT, HE OR SHE HAS NOT

11  GONE BACK.

12             AND AS WE SAID IN OUR BRIEFS, PLAINTIFFS COULD EASILY

13  AMEND TO INCLUDE SUCH ALLEGATIONS, IF NECESSARY.

14             THE COURT:  OKAY. WELL, LET'S MOVE ON TO WHAT I THINK

15  IS A TROUBLING ISSUE FOR THE PLAINTIFFS AND HAS SOME TRACTION,

16  BUT NOBODY HAS GIVEN ME ANY HELPFUL GUIDANCE, REALLY, AS TO HOW

17  TO DRAW THE LINE.

18             BUT REGARDING THE SCOPE OF STANDING, WHICH IS TO SAY

19  I DON'T THINK THAT IT IS SUFFICIENT PROBABLY THAT IT'S ONE --

20  IT'S A PARK THAT IS RUN BY ONE ENTITY.

21             I MEAN, THE HOTEL CASES BY ANALOGY WOULD SAY:

22                 "WELL, HILTON IS RUN BY HILTON, SO ALL THE

23                 HILTONS CAN BE SUED."

24             THE CASES HAVE REQUIRED MORE LIKE A COMMON POLICY OR

25  SUCH A PATTERN OF -- POSSIBLY THEY HAVE THROWN IT OUT IN
```

1   DICTA -- SUCH A PATTERN OF VIOLATIONS THAT ARE SO PERVASIVE AS

2   OPPOSED TO IN 1 PERCENT, FOR EXAMPLE, OR LESS THAN 1 PERCENT OF

3   THE CASES THAT YOU COULD SAY THERE WAS A CORPORATE POLICY THAT

4   WAS NATIONWIDE OR ENTITY WIDE, CHAIN-WIDE.

5           SO WHERE DOES THIS GO HERE?  I MEAN, I THINK, YOU

6   KNOW, LOOKING AT THE MAP, I'M NOT SURE ANYBODY HAS ALLEGED THAT

7   THEY HAVE BEEN TO ANY OF THESE PLACES IN, SAN MATEO, FOR EXAMPLE

8   OR BEEN DETERRED FROM GOING THERE.

9           AND THEY ARE PLACES WHERE THE VARIOUS NAMED

10  PLAINTIFFS HAVE SAID THAT THEY HAVE GONE.  AND I THINK,

11  INFERENTIALLY, IF NOT DIRECTLY, BUT READING THE COMPLAINTS I'M

12  DRAWING THE INFERENCES THAT ARE REASONABLE FROM WHAT'S PLED THAT

13  THEY HAVE BEEN DETERRED FROM GOING BACK TO PLACES THAT THEY HAVE

14  BEEN TO AND HAD BAD EXPERIENCES WITH.

15          AND I THINK THAT ISSUE IS BETTER HANDLED ON SUMMARY

16  JUDGMENT. BUT, YOU KNOW, THEY MAY HAVE BEEN TO THE MARIN

17  HEADLANDS, BUT I DON'T KNOW THAT ANYONE HAS BEEN TO -- I DON'T

18  KNOW.  ARE THESE PART OF IT?  PLACES FURTHER NORTH IN MARIN,

19  BOLINAS?  IT'S NOT TOO CLEAR TO ME.  I THINK BOLINAS IS IN IT.

20          IS BOLINAS PART OF THE GGNRA?

21          **MR. COOPER:**  I THINK IT'S BEEN EXCLUDED BY THE

22  STIPULATION BETWEEN THE PARTIES.

23          **THE COURT:**  OKAY.  ALL RIGHT. BUT THEN, THERE ARE

24  SOME PLACES HERE THAT NOBODY'S GONE TO.

25          **MR. ELSBERRY:**  YES, YOUR HONOR. AND, OF COURSE, I

| | |
|---|---|
| 1 | RECOGNIZE THAT STANDING IS A DIFFERENT INQUIRY THAN CLASS |
| 2 | CERTIFICATION. BUT IF YOU RECALL -- |
| 3 | **THE COURT:**  IT IS. AND, I MEAN, SURPRISINGLY ENOUGH, |
| 4 | QUOTING AN OFFHAND REMARK THAT I MADE AT SOME HEARING BACK TO ME |
| 5 | AS AUTHORITATIVE DOESN'T WORK. SO I DON'T NEED TO BE QUOTED BACK |
| 6 | TO MYSELF AGAIN, AS I WAS IN THE BRIEF. I WASN'T RULING ON THAT |
| 7 | ISSUE. |
| 8 | **MR. ELSBERRY:**  I UNDERSTAND. |
| 9 | **THE COURT:**  YES.  I WOULDN'T EVEN CALL IT "DICTA." |
| 10 | **MR. ELSBERRY:**  NO. |
| 11 | **THE COURT:**  SO -- |
| 12 | **MR. ELSBERRY:**  BUT AS WE EXPLAINED IN THE BRIEFS, IN |
| 13 | THE ARMSTRONG CASE THE COURT DID ACKNOWLEDGE THAT FINDINGS |
| 14 | REGARDING CLASS CERTIFICATION OFTEN OVERLAP. |
| 15 | **THE COURT:**  WELL, THERE IS SOME OVERLAP, BUT I'M |
| 16 | ASKING YOU A SPECIFIC QUESTION NOW. |
| 17 | **MR. ELSBERRY:**  RIGHT.  AND PLAINTIFFS' POSITION IS |
| 18 | THAT NOW THAT THE CLASS HAS BEEN CERTIFIED, IT IS REALLY OF NO |
| 19 | CONSEQUENCE THAT THE INDIVIDUAL NAMED PLAINTIFFS DON'T HAVE |
| 20 | STANDING FOR EACH AND EVERY BARRIER THAT WE ALLEGE IN THE |
| 21 | COMPLAINT. |
| 22 | **THE COURT:**  HAVE YOU CITED ANY CASE THAT HOLDS THAT? |
| 23 | I MEAN, THE CASES THAT I'M AWARE OF SAY YOU DON'T TAKE INTO |
| 24 | ACCOUNT THE ABSENT CLASS MEMBERS. |
| 25 | NOW, YOU MEAN IT MAKES A DIFFERENCE THAT THE CLASS IS |

```
1    PRE VERSUS POST CERTIFICATION?  AND WHERE DO THE CASES SAY THAT?

2              MR. ELSBERRY:  WELL, THERE ARE CASES CITED IN

3    ARMSTRONG, FOR EXAMPLE, THAT DO DISTINGUISH BETWEEN PRE AND POST

4    CERTIFICATION.  AND THEY TALK ABOUT THAT ONCE THERE'S A

5    CERTIFIED CLASS THE CLASS HAS STANDING AS TO ALL BARRIERS.  AND

6    THE ONLY THING THAT IS NECESSARY IS THAT THE PLAINTIFFS HAD

7    STANDING AT THE OUTSET OF THE ACTION.

8              AND WHATEVER, WHATEVER MAY HAVE BEEN THE CASE IF THE

9    COURT HAD NOT CERTIFIED A CLASS -- IN OTHER WORDS, THE

10   PLAINTIFFS MAY HAVE HAD STANDING FOR A CERTAIN RANGE OF

11   BARRIERS, DEPENDING UPON WHERE THEY WENT.  BUT UNDER THE NINTH

12   CIRCUIT AUTHORITY, THE POSTCERTIFICATION PHASE OF THE CASE, IT'S

13   LIKE YOU REEXAMINE STANDING AT EACH STEP OF THE CASE.

14             AND THEY ARE RAISING STANDING NOW, AND SO WE LOOK AT

15   WHAT WE HAVE NOW.

16             THE COURT:  WELL, WHERE DID YOU ARGUE THAT?

17             MR. ELSBERRY:  WELL, I'M NOT SURE WE SAID THAT.

18             THE COURT:  I DON'T THINK YOU DID. I THINK THIS IS

19   BRAND NEW.

20             MR. ELSBERRY:  WELL, IT'S, IN PART, IN RESPONSE TO

21   WHAT THEIR ARGUMENT WAS IN THE REPLY AND TO YOUR QUESTION NOW.

22             THE COURT:  OKAY. WELL, I NEED TO KNOW WHEN SOMETHING

23   NEW IS BEING BROUGHT UP. SO THIS IS NEW.  AND YOUR CITATION IS

24   ARMSTRONG?

25             MR. ELSBERRY:  YES.
```

1          **THE COURT:**  ANYTHING ELSE YOU'RE CITING?

2          **MR. ELSBERRY:**  WELL, AGAIN, I DO BELIEVE THAT THE

3    COMMON OWNERSHIP AND CONTROL OF THIS PARTICULAR SET OF PARK

4    UNITS IS DIFFERENT FROM A CHAIN OF HOTELS, FOR EXAMPLE. I MEAN,

5    THEY MAY BE GEOGRAPHICALLY DISPERSE, BUT THERE'S NO QUESTION --

6    AND DEFENDANTS HAVE ADMITTED -- THAT GGNRA AND NPS AND THE

7    PEOPLE IN CHARGE OF THOSE ENTITIES EXERT COMMON CONTROL OF

8    OWNERSHIP OF EACH AND EVERY PARK.

9          AND, IN FACT, THEY HAVE STILL BEEN UNABLE TO ANSWER

10   OUR DISCOVERY QUESTIONS ABOUT WHICH PROGRAMS AT GGNRA ARE OR ARE

11   NOT ACCESSIBLE BECAUSE THEY SAY THEY HAVE NOT COMPLETED THEIR

12   ASSESSMENT OF ALL UNITS IN THE PARK SYSTEM.

13         **THE COURT:**  OKAY.  LET ME ASK YOU TO RESPOND TO THAT

14   SET OF QUESTIONS, AND ON THE OTHER, INCLUDING THE IDEA THERE'S A

15   DIFFERENCE BETWEEN PRE AND POST CERTIFICATION.

16         ALSO, THOUGH, TO THE EXTENT THAT THE PLAINTIFFS ARE

17   ALLEGING THAT THERE'S ESSENTIALLY A POLICY NOT TO COMPLY, THAT

18   IS, CAN BE BOTH INFERRED FROM A WIDESPREAD PATTERN OF VIOLATIONS

19   PRETTY MUCH EVERYWHERE THEY GO.  EVERYWHERE THEY LOOK THEY FIND

20   A LOT OF VIOLATIONS, SO WE'RE NOT IN THE LESS THAN 1 PERCENT

21   SITUATION.

22         AND ALSO, AS I IDENTIFIED IN THE CLASS CERT DECISION,

23   THERE WERE COMMON DEFICIENT POLICIES THAT WERE OVERARCHING.

24         **MR. COOPER:**  CERTAINLY, YOUR HONOR. SO LET ME FIRST

25   POINT YOU TO TWO CASES, ONE FROM THE SUPREME COURT, LEWIS V.

1   CASEY, WHICH INVOLVED -- WHICH WAS A CASE WHERE A CLASS --

2            THE COURT:  WHICH CASE IS IT?

3            MR. COOPER:  LEWIS V. CASEY.  IT'S 518 U.S. 343,

4   WHICH WE CITED IN OUR BRIEFS.  AND IN LEWIS IT WAS

5   POSTCERTIFICATION.

6            AND THE COURT SPECIFICALLY HELD THAT:

7                 "A CLASS ACTION ADDS NOTHING TO THE QUESTION OF

8                 STANDING, FOR EVEN NAMED PLAINTIFFS WHO REPRESENT A

9                 CLASS MUST ALLEGE AND SHOW -- THE SHOWING PART BEING

10                IN SUMMARY JUDGMENT OR LATER -- THAT THEY HAVE

11                PERSONALLY BEEN INJURED, NOT THAT INJURY HAS BEEN

12                SUFFERED BY OTHER UNIDENTIFIED MEMBERS OF THE CLASS

13                TO WHICH THEY BELONG AND WHICH THEY PURPORT TO

14                REPRESENT."

15           THE COURT:  OKAY. AND YOU AGREE THAT IS A POSTCERT

16   CLASS?

17           MR. ELSBERRY:  YES. AND OUR POSITION IS THAT

18   PLAINTIFFS HAVE ALLEGED SUCH INJURY.

19           MR. COOPER:  WELL, AS I UNDERSTAND, OPPOSING COUNSEL

20   EARLIER SUGGESTED THAT NOT ALL NAMED PLAINTIFFS NEED STANDING.

21   AND I THINK LEWIS V. CASEY WOULD --

22           THE COURT:  NO, I DON'T THINK HE SAID THAT. THE

23   QUESTION IS NOT WHETHER THEY ALL NEED STANDING.  THEY DO.  THE

24   QUESTION I'M HONING IN ON NOW IS THE SCOPE OF WHAT IS CHALLENGED

25   BASED ON THE STANDING.

1          **MR. COOPER:**  AND, YOUR HONOR, WITH RESPECT TO THE

2    POLICY ISSUE IN THE EN BANC NINTH CIRCUIT CASE <u>HODGERS-DURGIN</u>,

3    CITATION 199 F.3D 1037, THE EN BANC NINTH CIRCUIT SAID:

4               " SYSTEM-WIDE INJUNCTIVE RELIEF IS NOT AVAILABLE

5          BASED ON ALLEGED INJURIES TO UNNAMED MEMBERS OF A

6          PROPOSED CLASS.  ANY INJURY UNNAMED MEMBERS OF THIS

7          PROPOSED CLASS MAY HAVE SUFFERED IS SIMPLY IRRELEVANT

8          TO THE QUESTION WHETHER THE NAMED PLAINTIFFS ARE

9          ENTITLED TO THE INJUNCTIVE RELIEF THEY SEEK."

10         AND IT'S CITING <u>LEWIS V. CASEY</u> FOR THAT PROPOSITION.

11         **THE COURT:**  OF COURSE, I HEARD YOU SAY THAT WAS A

12   PROPOSED CLASS.

13         **MR. COOPER:**  IT WAS A PROPOSED CLASS, SO THERE WAS NO

14   CLASS THERE.  BUT IN <u>LEWIS</u> THERE WAS A CLASS.  AND THE PRINCIPLE

15   IS THE SAME, THAT AT EVERY STAGE OF LITIGATION THE NAMED

16   PLAINTIFFS NEED TO HAVE STANDING.  YOU CAN'T JUST LOOK TO

17   INJURIES ALLEGEDLY SUFFERED BY CLASS MEMBERS.

18         **THE COURT:**  ALL RIGHT.  AND WHAT ABOUT THE POLICY

19   ALLEGATIONS?

20         **MR. COOPER:**  AS FOR THE POLICY ALLEGATIONS, YOUR

21   HONOR, YOU STILL NEED TO HAVE A PERSONALIZED INJURY.  AND SO

22   SIMPLY ALLEGING THAT THERE'S SOME POLICY ISN'T ENOUGH TO THEN

23   CHALLENGE SPECIFIC BARRIERS.  YOU HAVE TO SHOW THAT THE SPECIFIC

24   BARRIER IS EITHER A RESULT OF THE POLICY OR ALLEGE AN INJURY

25   CAUSED BY THE BARRIER ITSELF.

1    JUST SAYING THAT THERE'S A POLICY, AND THERE'S ALSO A

2    BARRIER, AND THEY ARE UNRELATED --

3         **THE COURT:**  WELL, NO.  THERE HAS TO BE A NEXUS.  I

4    AGREE.

5         **MR. COOPER:**  RIGHT.

6         **THE COURT:**  ARE THERE ANY ALLEGATIONS THAT ANY OF THE

7    NAMED PLAINTIFFS HAVE BEEN TO ANY OF THE PLACES IN SAN MATEO OR

8    TRIED TO GO THERE?

9         **MR. ELSBERRY:**  I DON'T BELIEVE THERE ARE, ALTHOUGH IN

10   OUR LATEST SUPPLEMENTAL DISCOVERY RESPONSES WE DID -- WE DID

11   IDENTIFY AT LEAST ONE NAMED PLAINTIFF WHO WENT TO MORI POINT IN

12   SAN MATEO.  THAT'S NOT IN THE COMPLAINT BECAUSE IT HADN'T

13   OCCURRED.

14        **THE COURT:**  OKAY.  LET ME SAY THIS:  I THINK THAT

15   PROBABLY THE SCOPE, IF IT'S GOING TO BE NARROWED, IS BETTER

16   ADDRESSED ON SUMMARY JUDGMENT AGAIN. BUT I WANT THE PARTIES,

17   DESPITE THEIR DISAGREEMENT ABOUT WHAT IT SHOULD BE, TO GIVE ME A

18   VERY CLEAR ROADMAP OF WHAT'S -- AND I GUESS THIS WOULD BE IN

19   SOMEWHAT THE NATURE OF STIPULATED FACTS -- OF WHAT PLACES THE

20   NAMED PLAINTIFFS AND THEIR -- AND NOW WE'RE TALKING FACTUAL, AT

21   LEAST A DISPUTED ISSUE OF FACT.  BUT THERE'S HAVE ACTUALLY

22   VISITED OR PLANNED TO VISIT, AND THEN BEEN SPECIFICALLY DETERRED

23   BY MAKING A CALL AND BEING TOLD:

24        "NO, THERE IS NO ACCESSIBLE BATHROOM," OR

25   SOMETHING LIKE THAT.

1          AND THEN, I THINK I DO HAVE TO -- AND I'LL LOOK AT

2    WHETHER THERE IS ANY DIFFERENCE PRE AND POST CERT.  BUT ASSUMING

3    I'M NOT PERSUADED BY THE NEW ARGUMENT BY THE PLAINTIFFS, I ALSO

4    NEED SOME HELP ON THIS ISSUE.

5          I MEAN, THE CASES DO SAY, FOR EXAMPLE, A MALE CAN'T

6    CHALLENGE A FEMALE BATHROOM, AND VICE VERSA.  THEY HAVE PEOPLE

7    OF BOTH GENDERS HERE, BUT THEY HAVEN'T ALL VISITED THE SAME

8    PLACES. SO I MAY OR MAY NOT END UP NARROWING SOMEWHAT THE SCOPE

9    OF WHAT IT IS, IF I'M PERSUADED BY THE ARGUMENT THAT IT DEPENDS

10   ON THE INDIVIDUAL NAMED PLAINTIFF'S STANDING.

11         **MR. ELSBERRY:**  AND, YOUR HONOR, JUST FOR YOUR

12   INFORMATION, IN CONJUNCTION WITH THAT SUBMISSION, PLAINTIFFS

13   WILL BE ABLE TO IDENTIFY GENERAL PARK-WIDE POLICIES THAT HAVE

14   RESULTED IN SPECIFIC BARRIERS ENCOUNTERED BY PLAINTIFFS.

15         **THE COURT:**  WELL, THAT MAY BE. BUT, FOR EXAMPLE, IF

16   IT WERE THE CASE THAT ALL THE BATHROOMS HAD BEEN BUILT ACCORDING

17   TO THE SAME DESIGN, THEN THAT WOULD BE A CLEARCUT EXAMPLE OF

18   THAT.  BUT I DOUBT THAT'S THE CASE BECAUSE THESE WEREN'T, IN

19   GENERAL, I UNDERSTAND CONSTRUCTED AT DIFFERENT TIMES.  AND, YOU

20   KNOW, SOME DEGREE OF LOCAL DISCRETION AND SOME PREEXISTING

21   FACILITIES KIND OF GRANDFATHERED IN AND SO FORTH AND SO ON.  SO

22   I DOUBT THAT SOMETHING LIKE THAT IS THE CASE.

23         BUT -- AND AS YOU KNOW, THE FAILURE TO DO A

24   TRANSITION PLAN OR A SELF-EVALUATION CAN'T BE THE BASIS OF

25   LIABILITY.

1          **MR. ELSBERRY:**  NO.

2          **THE COURT:**  SO --

3          **MR. ELSBERRY:**  WE UNDERSTAND.

4          **THE COURT:**  ON THE OTHER HAND, THERE WERE POLICIES

5    THAT I IDENTIFIED IN THE CLASS CERT THAT ARE OVERARCHING.  BUT

6    WHETHER THEY ARE GOING TO TETHER IT TO ALL THESE PLACES, I DON'T

7    KNOW.

8          SO ANYTHING FURTHER ON THAT POINT BECAUSE WE HAVE A

9    LOT OF OTHER THINGS TO COVER.

10         **MR. COOPER:**  I WOULD JUST REFER YOUR HONOR QUICKLY TO

11   FOOTNOTE FOUR ON PAGE SIX OF OUR OPENING BRIEF. IT LISTS A

12   NUMBER OF THE LOCATIONS IN THE PARK THAT NO NAMED PLAINTIFF

13   ALLEGES TO HAVE VISITED.

14         **THE COURT:**  OKAY.

15         **MR. COOPER:**  I GUESS I WOULD ALSO HAVE, I GUESS,

16   MAYBE A QUESTION FOR YOUR HONOR.  TO THE EXTENT THAT YOU WANT A

17   ROADMAP FROM US, ARE WE GOING TO GO BEYOND THE SCOPE OF THE

18   COMPLAINT BECAUSE --

19         **THE COURT:**  WELL, IT WOULD BE AT SUMMARY JUDGMENT,

20   SO, YES.

21         **MR. COOPER:**  OH, IT WOULD BE AT SUMMARY JUDGMENT.

22         **THE COURT:**  IT WILL BE BASED ON WHAT ARE THE FACTS --

23         **MR. COOPER:**  OKAY.

24         **THE COURT:**  -- THAT EITHER ARE -- THERE'S A

25   GENUINE -- EITHER THEY ARE STIPULATED, AGREED TO, OR THERE'S A

| | |
|---|---|
| 1 | GENUINE DISPUTE OF MATERIAL FACT.  BUT I WOULD DOUBT THERE WOULD |
| 2 | BE ANY GENUINE DISPUTES.  I MEAN, IF THE PLAINTIFF SAYS THEY |
| 3 | HAVE BEEN SOMEPLACE, HOW ARE YOU GOING TO DISPUTE THAT?  SO -- |
| 4 | OR THEY HAVE TRIED TO GO TO SOMEPLACE.  THE QUESTION IS:  WHAT |
| 5 | DO THEY CLAIM TO HAVE DONE AND WHAT HAVEN'T THEY DONE? |
| 6 | **MR. COOPER:**  CERTAINLY, YOUR HONOR.  NORMALLY YOU DO |
| 7 | HAVE TO SHOW JURISDICTION AT EVERY STAGE OF THE LITIGATION AND |
| 8 | SO -- |
| 9 | **THE COURT:**  YOU KNOW, NORMALLY THE GOVERNMENT |
| 10 | WOULDN'T DO REALLY WHAT THEY HAVE DONE TODAY.  AND I THINK MOST |
| 11 | JUDGES WOULD BE A LOT HARSHER, ACTUALLY REALLY TAKING ADVANTAGE |
| 12 | OF THE COURT THAT'S BEEN DONE BY BRINGING THESE THINGS SO LATE. |
| 13 | AND IT'S VERY WASTEFUL.  AND NEVER SURFACING THIS AT |
| 14 | ANY OF THE CASE MANAGEMENT CONFERENCES. IT'S REALLY STUNNING. SO |
| 15 | I'M GOING TO GIVE YOU A CHANCE, AND I'M NOT GOING TO GO THROUGH |
| 16 | THE EXERCISE OF HAVING, BECAUSE YOU LAY IN WAIT ON THIS FOR THE |
| 17 | MOST PART, AND I THINK THE NEW ALLEGATIONS ONLY JUSTIFY A SLIGHT |
| 18 | PERCENT OF WHAT YOU HAVE BROUGHT NOW.  I'M NOT GOING TO ALLOW |
| 19 | THAT AGAIN AND REQUIRE THROWING ANOTHER FOURTH OR FIFTH-AMENDED |
| 20 | COMPLAINT.  WE'LL JUST HANDLE IT AT THE SUMMARY JUDGMENT STAGE. |
| 21 | **MR. COOPER:**  I DO WANT TO MAKE CLEAR THAT THE SCOPE |
| 22 | OF THE STANDING ISSUES, IN PARTICULAR, WERE NOT THINGS THAT |
| 23 | COULD HAVE BEEN RAISED BEFORE GIVEN ALL THE NEW ALLEGATIONS IN |
| 24 | THE FOURTH-AMENDED COMPLAINT. |
| 25 | **THE COURT:**  WELL, I DON'T KNOW THAT THAT IS THE CASE. |

1    I DON'T THINK THAT IS TRUE, BECAUSE THE PLAINTIFFS HAVE NEVER

2    ALLEGED, FOR EXAMPLE, THAT THEY WENT TO SAN MATEO.

3            SO I DON'T AGREE WITH THAT.  BUT LET'S MOVE ON TO

4    PRIVATE RIGHT OF ACTION. I AGREE WITH JUDGE CHEN'S ANALYSIS THAT

5    ALTHOUGH -- THAT THE NINTH CIRCUIT PRECEDENT STILL STANDS AS TO

6    INJUNCTIVE RELIEF, PRIVATE CAUSE OF ACTION.  AND WHETHER THE

7    NINTH CIRCUIT AT SOME POINT WANTS TO RECONSIDER THAT.  MAYBE

8    THEY WOULD.

9            I MEAN, GOVERNMENT RAISES SOME, I THINK, PRETTY

10   INTERESTING AND POSSIBLY PERSUASIVE ARGUMENTS ABOUT LEGISLATIVE

11   HISTORY AND STATUTORY CONSTRUCTION.  HOWEVER, I DON'T THINK AS A

12   DISTRICT COURT I AM IN A POSITION TO OVERRULE THE NINTH CIRCUIT.

13   AND I THINK THAT'S WHAT YOU'RE ASKING ME TO DO.

14           AND IT'S NOT SO CLEARCUT THAT THE SUPREME COURT HAS,

15   IN FACT, OVERRULED THAT FOR THE REASONS STATED IN JUDGE CHEN'S

16   OPINION, WHICH I THINK IS PERSUASIVE, AS TO WHAT A COURT IN MY

17   POSITION AT THE DISTRICT COURT LEVEL SHOULD DO.

18           SO I'M -- BUT I DO HAVE A QUESTION.  ONE PROVISION

19   THAT NOBODY ADDRESSED, AND I'M NOT SURE WHETHER IT MAKES ANY

20   DIFFERENCE, BUT IS THE 29 U.S.C. SECTION 794 (A) SUBSECTION (B),

21   WHICH PROVIDES FOR ATTORNEY'S FEES TO PREVAILING PARTY OTHER

22   THAN THE U.S.

23           AND IT SAYS:

24               "IN ANY ACTION OR PROCEEDING TO ENFORCE OR

25               CHARGE A VIOLATION OF A PROVISION OF THIS

1    SUBCHAPTER."

2         SO DOES THAT IN ANY WAY SUGGEST THAT THERE ARE

3    ACTIONS IN WHICH AT THE VERY LEAST YOU CAN GET ATTORNEY'S FEES

4    AGAINST THE FEDERAL GOVERNMENT WHEN THEY USE THE LANGUAGE:

5         "ANY ACTION OR PROCEEDING TO ENFORCE"?

6         **MR. COOPER:**  YES, YOUR HONOR.  AND, IN FACT, THE NINTH

7    CIRCUIT DID SPECIFICALLY ADDRESS THE ATTORNEY'S FEES PROVISION

8    IN DOE.  AND WHAT IT FOUND WAS IT DOESN'T PROVIDE ANY EVIDENCE

9    OF A CAUSE OF ACTION UNDER 504 BECAUSE THE ATTORNEYS PROVISION

10   APPLIES TO THE ENTIRE -- I THINK IT'S THE SUBCHAPTER, THAT

11   SUBCHAPTER OF THE REHABILITATION ACT, WHICH ENCOMPASSES, FOR

12   EXAMPLE, SUITS UNDER 501 FOR EMPLOYMENT DISCRIMINATION BY THE

13   FEDERAL GOVERNMENT.

14        AND SO THE ATTORNEY'S FEES PROVISION HAS A PURPOSE OF

15   PROVIDING ATTORNEY'S FEES IN THE EMPLOYMENT DISCRIMINATION

16   CLAIMS BROUGHT UNDER 501.  BUT IT DOESN'T -- AND, THEREFORE,

17   DOESN'T SIGNAL ANY INTENT BY CONGRESS TO HAVE A CAUSE OF ACTION

18   UNDER 504.

19        **THE COURT:**  OKAY.  DO YOU WANT TO ADDRESS THAT?

20        **MR. ELSBERRY:**  I AGREE WITH DEFENDANTS THAT DOE DID

21   SAY THAT IT REJECTED AN ARGUMENT THAT 794 (A) SUBSECTION (B)

22   NECESSARILY INDICATED THAT THERE WAS A PRIVATE RIGHT OF ACTION

23   FOR 504, ALTHOUGH THE DISTRICT COURT IN THE U.S. TREASURY CASE

24   WE CITED, THE PAULSEN CASE, DID RELY ON 504 -- I MEAN, 505

25   (B) -- TO FIND THAT THERE WAS NO SOVEREIGN IMMUNITY FOR

1    EQUITABLE RELIEF UNDER 504.

2            SO ALTHOUGH THE NINTH CIRCUIT HAS REJECTED THAT

3    ARGUMENT, OTHER COURTS HAVE ACCEPTED IT.

4            **THE COURT:**  OKAY. WELL, I'M IN THE NINTH CIRCUIT.

5            OKAY. LET'S TALK ABOUT THE WEBSITE.

6            IT SEEMS AS THOUGH AS LONG AS THE PARKS CONSERVANCY

7    IS OPERATING THE WEBSITE UNDER CONTRACT WITH THE PARK, THAT'S

8    THE END OF THE STORY.  THE PARK'S RESPONSIBLE.

9            **MR. COOPER:**  RESPECTFULLY, YOUR HONOR, THE PARK

10   CONSERVANCY IS NOT OPERATING A WEBSITE UNDER A CONTRACT WITH THE

11   PARK.  THE PARK CONSERVANCY HAS CONTRACTS WITH THE PARK, BUT

12   THERE'S NO ALLEGATION IN THE COMPLAINT.  AND IF YOU WERE TO LOOK

13   OUTSIDE THE RECORD -- EVEN THOUGH THIS IS A FACIAL CHALLENGE, SO

14   YOU'RE NOT SUPPOSED TO LOOK OUTSIDE THE COMPLAINT -- BUT IF YOU

15   WERE TO, THERE ARE NO CONTRACTS WITH THE CONSERVANCY ABOUT ITS

16   OPERATING A WEBSITE.

17           **THE COURT:**  THE CONTRACT IS FOR IT TO DO WHAT?

18           **MR. COOPER:**  ALL SORTS OF DIFFERENT THINGS, BUT NOT

19   SPECIFICALLY WEBSITES.  SO, FOR EXAMPLE, THE CONSERVANCY

20   OPERATES PROGRAMS ITSELF AT VARIOUS FACILITIES IN -- ON THE PARK

21   LANDS ITSELF AT GOLDEN GATE NATIONAL RECREATION AREA.  BUT THE

22   PARK ITSELF HAS ITS OWN WEBSITE, SO IT WOULDN'T HAVE CONTRACTED

23   WITH A THIRD PARTY TO PROVIDE A SEPARATE WEBSITE.

24           I MEAN, IT'S JUST LIKE THE PARK HAS CONTRACTS WITH

25   ALL SORTS OF VENDORS ABOUT VARIOUS THINGS, BUT DOESN'T CONTRACT

1    WITH THEM TO RUN WEBSITES.

2              AND THERE'S NO ALLEGATION IN THE COMPLAINT, FOR

3    INSTANCE, THAT THE CONSERVANCY'S WEBSITE IS RUN UNDER THE

4    MANAGEMENT OR OPERATION OF GOLDEN GATE NATIONAL RECREATION AREA

5    OR THE OTHER DEFENDANTS.

6              **MR. ELSBERRY:**  AS YOUR HONOR MAY RECALL, GGNRA HAS A

7    NUMBER OF SO-CALLED PARK PARTNERS WITH WHICH IT HAS VARIOUS

8    ARRANGEMENTS, INCLUDING CONTRACTS AND OTHER TYPES OF THINGS,

9    THAT ALLOW THE PARK PARTNERS TO ENGAGE IN PROGRAMS AND CONDUCT

10   AND HAVE FACILITIES ON GGNRA LANDS.

11             AND THE CONSERVANCY, THE PARK'S CONSERVANCY IS THE

12   PRIMARY PARK PARTNER OF GGNRA. AND WHATEVER ARRANGEMENTS GGNRA

13   MAY HAVE WITH THE CONSERVANCY, IT'S VERY CLEAR THAT THE

14   CONSERVANCY ENGAGES IN EXTENSIVE ACTIVITY THROUGHOUT GGNRA.  FOR

15   EXAMPLE, VOLUNTEER -- ARRANGING FOR VOLUNTEERS TO DO MAINTENANCE

16   AND SUCH.

17             AND IF YOU GO TO THE GGNRA WEBSITE, ALMOST EVERY TIME

18   YOU SEEK INFORMATION ABOUT A PARTICULAR PARK AREA, THE GGNRA

19   WEBSITE DIRECTS YOU TO THE CONSERVANCY WEBSITE WHERE MOST OF THE

20   INFORMATION ABOUT GGNRA APPEARS.

21             SO I DON'T THINK THAT DEFENDANTS CAN ESCAPE

22   RESPONSIBILITY FOR THAT WEBSITE BY SAYING:

23                 "WELL, THE CONSERVANCY IS DOING THAT WEBSITE ON

24   ITS OWN, BECAUSE --

25             **THE COURT:**  IS THAT TRUE THAT IT DIRECTS YOU TO THAT

1    WEBSITE?

2              **MR. COOPER:**  IT DOES HAVE LINKS, YOUR HONOR, TO THE

3    CONSERVANCY WEBSITE.  IT ALSO HAS LINKS TO STATE PARK WEBSITES.

4    IT ALSO HAS LINKS TO OTHER SITES THAT PROVIDE INFORMATION THAT

5    MIGHT BE RELEVANT.

6              **THE COURT:**  DOES THIS ORGANIZATION EXIST FOR ANY

7    PURPOSE OTHER THAN DEALING WITH GOLDEN GATE RECREATIONAL AREA?

8              **MR. COOPER:**  I'M NOT FULLY SURE OF THE MANDATE OF THE

9    CONSERVANCY, YOUR HONOR.  I THINK IT DOES CERTAINLY DO A LOT

10   WITH THE PARK, BUT IT'S NOT -- YOU KNOW, I DON'T REPRESENT THE

11   CONSERVANCY, SO I'M NOT FULLY SURE OF WHAT IT'S --

12             **THE COURT:**  RIGHT.  BUT, I MEAN --

13             **MR. COOPER:**  -- WHAT IT IS.

14             **THE COURT:**  -- THEY DON'T HAVE OTHER PARKS THAT THEY

15   DEAL WITH, AS WELL.

16             **MR. COOPER:**  NOT TO MY KNOWLEDGE, THOUGH I CAN'T BE A

17   HUNDRED PERCENT CERTAIN OF THAT, YOUR HONOR.

18             **THE COURT:**  AND REGARDING 508, WHICH YOU AGAIN RAISE

19   FOR THE FIRST TIME FOR NO REASON RELATED TO THE COMPLAINT, I

20   DON'T THINK.

21             **MR. COOPER:**  WELL, YOUR HONOR, ALL THE PRIOR

22   COMPLAINTS THERE WERE NO WEBSITE ALLEGATIONS IN THE COMPLAINT.

23   AND SO --

24             **MR. ELSBERRY:**  I THINK THERE ACTUALLY WERE, YOUR

25   HONOR.

1      **THE COURT:**  IT SEEMS TO ME THE WEBSITE HAS BEEN AT

2  ISSUE ALL THE TIME I CAN REMEMBER.

3      **MR. COOPER:**  IT WAS RAISED AT CLASS CERTIFICATION,

4  BUT BY THEN IT WAS TOO LATE TO MOVE TO DISMISS ON THESE GROUNDS.

5      **MR. ELSBERRY:**  I DISAGREE.  THERE WERE ALLEGATIONS

6  ABOUT THE WEBSITE IN PRIOR VERSIONS OF THE COMPLAINT. IF YOU

7  WOULD LIKE ME TO ADDRESS THE SUBSTANCE OF 508 --

8      **THE COURT:**  WELL, IN JUST A MINUTE.

9      LET ME ASK THE GOVERNMENT:  WHY DO YOU THINK 508

10  PROVIDES GREATER PROTECTION THAN SECTION 504?  BECAUSE IT

11  SPECIFICALLY HAS A SECTION THAT SAYS ITS REMEDIES ARE CUMULATIVE

12  TO ALL THE OTHER ONES AS LONG AS THERE ISN'T THIS GREATER THAN

13  OR EQUAL TOO.

14      **MR. COOPER:**  CERTAINLY, YOUR HONOR.  AND LET ME ALSO

15  JUST EXPAND ON THE PRIOR INCIDENTS.  THE CURRENT COMPLAINT

16  INCLUDES THIS ATTACHED EXHIBIT E, WHICH LISTS SOMETHING LIKE, I

17  THINK, 56 ALLEGED WEBSITE BARRIERS AT THE WEBSITE OF GOLDEN GATE

18  NATIONAL RECREATIONAL AREA AND THE CONSERVANCY.  AND THE

19  STANDARDS GIVEN, EACH OF THE SPECIFIC STANDARDS THAT ARE ALLEGED

20  TO HAVE BEEN VIOLATED BY EACH OF THESE SPECIFIC 56 BARRIERS ARE

21  ALL STANDARD PROMULGATED UNDER 508.

22      ALL OF THE BARRIERS ALLEGED IN THIS EXHIBIT TO THE

23  COMPLAINT, ARE ALL -- THEY ARE ALL ALLEGED TO HAVE VIOLATED

24  STANDARDS PROMULGATED UNDER 508, NOT STANDARDS PROMULGATED UNDER

25  504.  AND THIS EXHIBIT WAS NOT PART OF ANY PRIOR COMPLAINT.

1        AND SO THIS IS WHAT REALLY SHOWS THAT THE CAUSE OF

2    ACTION THAT PLAINTIFFS ARE SEEKING TO ALLEGE HERE IS ONE UNDER

3    508. AND THE REASON WHY 508 GIVES A GREATER PROTECTION IS

4    THAT -- WELL, FIRST OF ALL, IF 508 GAVE THE SAME PROTECTION AS

5    504, IT WOULD BE REDUNDANT.  WHY WOULD CONGRESS HAVE ENACTED IT?

6        AND WITH RESPECT TO YOUR SPECIFIC QUESTION ABOUT

7    USING THE SAME REMEDIES AND PROCEDURES, WHAT THAT IS MEANT TO DO

8    IS PROVIDE THE SAME REMEDIAL PROCESS AND THE SAME POTENTIAL FOR

9    REMEDY.  SO IF 504 ALLOWS INJUNCTIONS OR DAMAGES, THEN 508

10   WOULD, TOO.

11       BUT THE SUBSTANTIVE RULE THAT'S BEING APPLIED IS

12   GREATER UNDER 508. SO THE SUBSTANTIVE RULE --

13       **THE COURT:**  WHY IS IT GREATER?  THAT'S NOT

14   SELF-EVIDENT TO ME, AND IT HASN'T BEEN EXPLAINED.

15       **MR. COOPER:**  THE REASON IT IS GREATER IS OTHERWISE

16   508 WOULD BE REDUNDANT.  SO 508 SETS OUT SPECIFIC RULES SAYING

17   FEDERAL AGENCY INFORMATION TECHNOLOGY, WHICH INCORPORATES --

18   WHICH INCLUDES WEBSITES, MUST BE MADE ACCESSIBLE.

19       AND THEN, THERE ARE SPECIFIC --

20       **THE COURT:**  OKAY.  BUT "MORE SPECIFIC" IS NOT THE

21   SAME AS "GREATER."  THEY ARE NOT --

22       **MR. COOPER:**  CERTAINLY.  AND THE REASON CONGRESS SAYS

23   IT PASSED THIS, AS WE CITED IN OUR BRIEF, IN THE COMMITTEE

24   REPORT OR THE CONFERENCE REPORT GIVEN -- EXCUSE ME -- THE

25   CONFERENCE REPORT CREATED WHEN 508 WAS ENACTED WAS:

```
 1                      "THAT CURRENT LAW DOESN'T PROTECT THESE THINGS.
 2                 AND SO WE'RE PASSING A NEW STATUTE, 508, TO ENSURE
 3                 THAT FEDERAL AGENCY WEBSITES ARE ACCESSIBLE, AND
 4                 WE'RE GOING TO PROVIDE A PARTICULAR REMEDIAL PROCESS.
 5                 NAMELY, YOU FILE THE ADMINISTRATIVE COMPLAINT.  THE
 6                 AGENCY WILL, HOPEFULLY, WORK IT OUT INTERNALLY.  BUT
 7                 IF YOU ARE DISSATISFIED, THEN YOU PRESUMABLY COULD GO
 8                 SEEK REVIEW UNDER THE APA."
 9                 THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE
10      PLAINTIFFS ON THIS ONE.
11                 MR. ELSBERRY:  I'D LIKE TO EMPHASIZE THAT PLAINTIFFS
12      ARE NOT SEEKING TO ENFORCE SECTION 508. AND, WE NEVER HAVE TRIED
13      TO. WE'RE SEEKING PROGRAM ACCESS, GENERALLY.  AND IN OUR VIEW,
14      ACCESS TO THE SERVICES, PROGRAMS AND ACTIVITIES OF GGNRA WOULD
15      INCLUDE EVERYTHING IT DOES. AND THAT INCLUDES ACCESS TO ITS
16      WEBSITE.
17                 AND 508 MAY INCLUDE LOTS OF SPECIFIC THINGS, BUT
18      WE'VE NEVER REFERENCED 508 IN ORDER TO ALLEGE HOW THE WEBSITE IS
19      INACCESSIBLE TO PLAINTIFFS.
20                 THE COURT:  NOW, THEY ARE SAYING WHEN YOU ATTACHED
21      THE LIST THAT'S WHAT YOU DID.
22                 MR. ELSBERRY:  WELL, THAT ISN'T WHAT WE DID. WE
23      ACTUALLY -- THOSE ARE COMMON STANDARDS. THEY MAY BE THE SAME AS
24      508, I DON'T KNOW. BUT THEY ARE STANDARDS ADOPTED BY SOME KIND
25      OF CONSORTIUM OF WEBSITE ACCESS PEOPLE.
```

1      AND OUR WEBSITE EXPERT CAME UP WITH THOSE STANDARDS

2 AND APPLIED THEM IN ORDER TO DETERMINE WHAT WAS ACCESSIBLE TO

3 PEOPLE WITH DISABILITIES. AND THAT WAS WHAT WE RELIED ON. AND I

4 BELIEVE DEFENDANTS' ARGUMENT THAT 508 PROVIDES GREATER

5 PROTECTION THAN 504 IS RATHER CIRCULAR, BECAUSE IT DEPENDS ON

6 THEIR ARGUMENT THAT 504 DOES NOT INCLUDE WEBSITES.

7      **THE COURT:**  AND YOUR POSITION IS IT DOES.  AND

8 BECAUSE OF WHAT?  THEY ARE SAYING THAT CONGRESS ENACTED 508 AND

9 HAS CONGRESSIONAL LEGISLATIVE HISTORY SAYING BECAUSE 504 DIDN'T

10 COVER WEBSITES.

11      **MR. ELSBERRY:**  I DON'T BELIEVE THAT IT'S EVER SAID

12 THAT SECTION 504 DID NOT COVER WEBSITES.  AND IF THERE WAS ANY

13 DOUBT ABOUT THAT, I BELIEVE THAT, AS YOU SAID, 504 (G), THE

14 SAVINGS CLAUSE WHICH SAYS THAT NOTHING IN 508 LIMITS OTHER

15 REMEDIES PROVIDED IN THE REHAB ACT, I THINK THAT IT STILL ALLOWS

16 US TO GO UNDER 504 FOR PROGRAM ACCESS. IT'S CUMULATIVE.

17      **MR. COOPER:**  THE CONFERENCE REPORT, YOUR HONOR,

18 STATES:

19           "SECTION 508 MAKES SIGNIFICANT CHANGES TO

20           CURRENT LAW.  THESE CHANGES INCLUDE REQUIRING FEDERAL

21           AGENCIES TO PROCURE, MAINTAIN AND USE ELECTRONIC AND

22           INFORMATION TECHNOLOGY THAT PROVIDES INDIVIDUALS WITH

23           DISABILITIES WITH COMPARABLE ACCESS TO WHAT IS

24           AVAILABLE TO INDIVIDUALS WITHOUT DISABILITIES."

25      **THE COURT:**  WELL, POSSIBLY "COMPARABLE ACCESS" MIGHT

1   BE DIFFERENT FROM "PROGRAM ACCESS."

2          **MR. COOPER:**  I SUPPOSE THAT IS POSSIBLE, YOUR HONOR,

3   THOUGH I DON'T THINK THAT'S WHAT 508 WAS INTENDING TO DO. AND

4   WITH RESPECT TO -- AGAIN, YOUR HONOR, OPPOSING COUNSEL IS

5   MISSTATING WHAT HIS COMPLAINT SAYS WHEN HE SUGGESTS THAT THE

6   STANDARDS BEING USED TO SAY THAT THERE ARE BARRIERS ARE NOT 508

7   STANDARDS.

8          THAT'S WHERE THE STANDARDS HAVE COME FROM. THERE'S

9   508, AMONG ITS VARIOUS PROVISIONS, AUTHORIZES THE PROMULGATION

10  OF REGULATIONS TO ENSURE THAT FEDERAL WEBSITES AND INFORMATION

11  TECHNOLOGY ARE ACCESSIBLE.  AND THOSE ARE THE VERY STANDARDS

12  THAT THEY ARE ALLEGING TO HAVE BEEN VIOLATED HERE.

13         AND I WOULD ALSO ADD THERE'S NO ALLEGATIONS IN ANY OF

14  THESE PROVISIONS THAT ANY INDIVIDUAL NAMED PLAINTIFF WAS

15  INJURED.

16         YOU KNOW, AGAIN, AS PLAINTIFFS ACKNOWLEDGE, THIS IS

17  JUST THINGS THAT THEIR EXPERT LOOKED AT AND CAME UP WITH AND

18  DECIDED UPON HIS OWN NO ALLEGATIONS THAT ANYBODY WAS HURT.

19         **THE COURT:**  WELL, I DON'T THINK THAT'S RIGHT.  I

20  THINK THAT THE BLIND PLAINTIFF OR PLAINTIFFS SAYS THAT, YOU

21  KNOW, SHE TRIED TO GET INFORMATION ABOUT THESE PROGRAMS AND

22  COULDN'T GET IT, AND SO ON.  AND THAT'S BASICALLY --

23         **MR. COOPER:**  BUT --

24         **THE COURT:**  SO OKAY. I THINK WE'VE DONE ENOUGH ON

25  THIS ONE, BECAUSE WE'RE RUNNING OUT OF TIME HERE.

1          **MR. COOPER:** IF YOUR HONOR WOULD LOOK AT SOME OF THE

2    SPECIFIC ALLEGATIONS --

3          **THE COURT:** I WILL.

4          **MR. COOPER:** -- SOME ARE THINGS LIKE SPANISH WEBSITES

5    AND --

6          **THE COURT:** I WILL. I DON'T WANT TO HEAR ANYMORE

7    FROM YOU OH THIS NOW BECAUSE IT'S 9:54.

8          **MR. COOPER:** CERTAINLY, YOUR HONOR.

9          **THE COURT:** OKAY. STATUTE OF LIMITATIONS. I'M ASKING

10   THE PLAINTIFFS IF YOU TAKE OUT THE ALLEGATIONS THAT ARE MORE

11   THAN SIX YEARS OLD, WHAT DIFFERENCE DOES IT MAKE?

12         **MR. ELSBERRY:** I DON'T THINK IT MAKES MUCH DIFFERENCE

13   AT ALL.

14         **THE COURT:** ANY?

15         **MR. ELSBERRY:** PERHAPS, DEPENDING ON THE COURT'S

16   RULING ON STANDING IT COULD HAVE A -- IT COULD ELIMINATE THOSE

17   SPECIFIC BARRIERS, PERHAPS.

18         **THE COURT:** WELL, I THINK THAT'S ANOTHER THING THAT

19   I'LL WANT ADDRESS ON THE SUMMARY JUDGMENT IN CONNECTION WITH THE

20   SCOPE.

21         SAME QUESTION TO YOU, BUT I THINK WE'LL DEAL WITH

22   THAT AT SUMMARY JUDGMENT.

23         NOW, THE ISSUE OF THE PROPER DEFENDANTS SEEMS TO ME

24   THAT PLAINTIFF IS -- AGAIN, THIS IS A NO EXCUSE FOR NOT RAISING

25   THIS EARLIER. BUT IT SEEMS AS IF PLAINTIFF IS CONVINCING THAT

1    AS TO THE ENTITIES, THEY ARE COVERED BY THE STATUTE.  BUT I'M

2    NOT SURE ABOUT THE INDIVIDUALS. I DON'T THINK PLAINTIFFS REALLY

3    JUSTIFIED HAVING THE INDIVIDUALS IN.

4            I DON'T KNOW WHAT THE POINT OF ALL THIS IS. WHAT,

5    DOES THE GOVERNMENT GAIN SOME ADVANTAGE BY SUBSTITUTING DOI --

6            **MR. COOPER:**  WE'RE NOT AWARE OF ANY ADVANTAGE IN THIS

7    CASE, YOUR HONOR.  WE BROUGHT IT UP PURELY AS A HOUSEKEEPING

8    MATTER, MAINLY FOR FUTURE CASES TO MAKE SURE THAT THERE'S PROPER

9    SERVICE OF THE PROPER DEFENDANTS.

10           IN THIS CASE WE'RE NOT SEEKING TO HAVE THE CASE

11   DISMISSED BECAUSE OF THE CHANGE IN THE DEFENDANTS.  WE WERE JUST

12   SEEKING TO GET IT RIGHT UNDER WHAT WE THINK THE APPROPRIATE VIEW

13   OF THE LAW IS AND SUBSTITUTE IN THE PROPER DEFENDANT.

14           WE'RE NOT AWARE OF ANY ADVANTAGE IT WOULD GIVE TO

15   EITHER SIDE BASICALLY ABOUT WHO THE DEFENDANTS ARE.

16           **MR. ELSBERRY:**  WELL, I WOULD HAVE TO DISAGREE. IF THE

17   DEPARTMENT OF THE INTERIOR BECOMES THE ONLY DEFENDANT, ALL OF

18   THE DISCOVERY, FOR EXAMPLE, WE'VE PROPOUNDED AGAINST NATIONAL

19   PARK SERVICE AND GGNRA.  AND DEFENDANTS HAVE BEEN VERY CAREFUL

20   TO LIMIT US TO THOSE ENTITIES AND NOT ALLOW US TO GO BEYOND INTO

21   ANYTHING THAT DOI HAS DONE INDEPENDENT.

22           WE WOULD HAVE TO REDO FACT DISCOVERY. AND, I MEAN,

23   THIS IS A -- AS YOUR HONOR HAS EMPHASIZED, THIS IS A FUNDAMENTAL

24   CASE MANAGEMENT MATTER WHERE THEY REPRESENTED THE PROPER PARTIES

25   WERE IN THE ACTION, AND WE RELIED ON THAT AND HAVE BEEN

1    PROCEEDING DILIGENTLY.

2              **THE COURT:**  WELL, IS THERE ANY REASON THAT YOU NEED

3    THESE INDIVIDUALS?  AND IS THERE ANY REAL JUSTIFICATION FOR

4    THEM?

5              **MR. ELSBERRY:**  WELL, AS WE SAID, WE JUST DON'T KNOW.

6    I MEAN, IF THEY EVENTUALLY SUCCEED IN ELIMINATING -- IN SAYING

7    THAT AGENCIES, FOR EXAMPLE, ARE IMMUNE, THERE MAY BE SOME THEORY

8    THAT INDIVIDUALS CAN BE HELD LIABLE.

9              IT'S DIFFICULT, BECAUSE THIS IS UNCHARTED TERRITORY.

10             **THE COURT:**  WELL, AND THE GOVERNMENT IS ALSO TELLING

11   ME THAT IT DOESN'T REALLY MAKE ANY DIFFERENCE, SO I'M VERY

12   UNCLEAR AS TO WHY THE GOVERNMENT WOULD BRING A MOTION LIKE --

13   BRING AN ARGUMENT LIKE THIS UP AT THIS LATE DATE IN THE SUIT.

14             **MR. COOPER:**  IT'S THE REASON WE DIDN'T EMPHASIZE THE

15   ARGUMENT, YOUR HONOR, AS I SAID, IT'S JUST PURELY HOUSEKEEPING

16   AND TO ENSURE FUTURE CASES --

17             **THE COURT:**  WELL, IT'S THE KIND OF HOUSEKEEPING THAT

18   SHOULD HAVE BEEN DONE AT THE OUTSET, IF IT'S GOING TO BE DONE AT

19   ALL.

20             ALL RIGHT.  APPARENTLY, THERE'S SOME DISAGREEMENT NOW

21   OVER YOUR RECENT STIPULATION ABOUT EXCLUDING AREAS AS TO WHAT

22   THAT COVERS OR NOT, OR ARE YOU STILL ON THE SAME PAGE ON THAT?

23             **MR. ELSBERRY:**  I BELIEVE THE ONLY DISAGREEMENT IS THE

24   EXTENT OF THE EXCLUSION OF POINT BONITA LIGHTHOUSE.

25             ONE OF THE PLAINTIFFS ALLEGED THAT HE COULD NOT

1  ACCESS A BATHROOM THERE, I BELIEVE.  AND THE REASON WE EXCLUDED

2  THE LIGHTHOUSE ITSELF WAS THAT WHEN OUR EXPERT WENT TO INSPECT

3  IT THEY WERE REBUILDING A BRIDGE THAT ALLOWED YOU TO GET TO THE

4  ACTUAL LIGHTHOUSE.

5         THE COURT:  RIGHT.

6         MR. ELSBERRY:  BUT THERE ARE PARK AREAS THAT WERE

7  INSPECTED OTHER THAN THOSE, AND I BELIEVE -- I DON'T KNOW WHAT

8  DEFENDANTS' POSITION IS ON WHETHER THE ENTIRE AREA'S EXCLUDED.

9         THE COURT:  WELL --

10        MR. COOPER:  MY UNDERSTANDING IS THAT THERE ISN'T

11 MUCH AT POINT BONITA OTHER THAN THE LIGHTHOUSE AND IMMEDIATE

12 SURROUNDINGS THERE.  SO WHEN POINT BONITA LIGHTHOUSE WAS

13 EXCLUDED BY THE STIPULATION, THAT MEANT THE AREA OF POINT BONITA

14 LIGHTHOUSE.

15        AND SO IT SEEMS THERE'S A DISAGREEMENT ABOUT WHETHER

16 SORT OF THE PERIMETER OF EXCLUSION, AND I'M NOT SURE.

17        THE COURT:  WELL, I WOULD LIKE YOU TO WORK THAT OUT.

18 I WOULD THINK THAT YOU COULD, AND I DON'T REALLY UNDERSTAND WHY

19 THERE WOULD BE DISAGREEMENT OVER THAT.

20        ALL RIGHT. SO WE NEED TO WRAP THIS UP. IS THERE

21 ANYTHING ELSE THAT -- I MEAN, I'VE READ ALL THE PAPERS. I THINK

22 WE'VE ADDRESSED THE MAIN ISSUES THAT ARE HERE.

23        ANYTHING ELSE THAT NEEDS TO BE SAID THIS MORNING?

24        MR. ELSBERRY:  YOUR HONOR, JUST YOU MENTIONED THAT

25 REGARDING THE SCOPE OF STANDING AND WHETHER IT CHANGES POSTCLASS

1    CERT.  AND I MENTIONED THAT ARMSTRONG CITED A COUPLE OF CASES

2    ABOUT THAT.  I JUST WANTED TO GIVE YOU A CITE FOR THAT WHERE

3    THOSE CASES WERE CITED.  IT'S AT 275 F.3D AT 860.

4              **THE COURT:**  OKAY. ALL RIGHT. ANYTHING ELSE?

5              **MR. COOPER:**  NOTHING FROM THE GOVERNMENT, YOUR HONOR.

6              **THE COURT:**  ALL RIGHT.  THANK YOU.

7              **MR. ELSBERRY:**  THANK YOU, YOUR HONOR.

8                   (THEREUPON, THIS HEARING WAS CONCLUDED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    CERTIFICATE OF REPORTER
 3          I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY
 4   THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED
 5   SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO
 6   TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE
 7   RECORD OF SAID PROCEEDINGS.
 8              I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR
 9   ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING
10   PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE
11   OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.
12              THE FEE CHARGED AND THE PAGE FORMAT FOR THE
13   TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL
14   CONFERENCE.
15              IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS
16   8TH DAY OF JUNE, 2012.
17
18
19
20   _____
21         /S/ KATHERINE WYATT
22
23
24
25
```

KATHY WYATT, CSR, RMR (925) 212-5224